KERR, *County Clerk,* v. STATE *ex rel.* WIMBISH, *County Attorney.*

No. 2759. Opinion Filed May 14, 1912.

(124 Pac. 284.)

1. **COUNTIES—Indebtedness—Limitations.** The limitation imposed upon county indebtedness by section 1 of chapter 16, Sess. Laws 1895, Ter. of Oklahoma (section 1683, Comp. Laws 1909), includes debts and liabilities incurred and fixed by operation of law as well as those arising from express contracts.

2. **SAME.** Section 26 of article 10, p. 150, Williams' Ann. Const. Okla., fixes a limitation upon the authority of the Legislature and other agencies of the state to allow the counties, cities, and other subdivisions of the state to become indebted and is not a

limitation upon the authority of the Legislature to fix a limit within the bounds therein determined, hence section 1 of chapter 16, Sess. Laws 1895 (section 1683, Comp. Laws 1909), is not repugnant thereto and was brought over and became a valid statute of this state under and by virtue of the terms of the Enabling Act and the Schedule to the Constitution.

3.    MANDAMUS—Proceedings—Accrual of Cause of Action.    The issue to be tried and determined in mandamus is that raised by the writ and answer, and the nonexistence of a cause of action when a suit is brought is a fatal defect which cannot be cured by the accrual of a cause while the suit is pending.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County;
Tom D. McKeown, Judge.*

Action by the State on the relation of Robert Wimbish, County Attorney of Pontotoc County, for mandamus to W. S. Kerr, County Clerk of Pontotoc County. Judgment for plaintiff, and defendant brings error. Reversed and remanded with directions to dismiss.

*Currie & Duncan* and *J. F. McKeel,* for plaintiff in error.

*Chas. West,* Atty. Gen., *W. C. Reeves,* Asst. Atty. Gen., and *Robert Wimbish,* Co. Atty., for defendant in error.

DUNN, J.   This case presents error from the district court of Pontotoc county and was an action of mandamus in that court brought by the state of Oklahoma on the relation of the county attorney of that county against the county clerk thereof, for the purpose of securing an order requiring him to sign, seal, and deliver certain warrants for claims which had been allowed by the board of county commissioners to the extent of 100 per cent. of the levies made for the fiscal year ending June 30, 1911, and for such other sums as may have been or may be added to any of the county funds against which warrants might properly be drawn. The demand was made on June 5, 1911, and, under the agreed statement of facts, it is admitted that warrants had then been issued to the amount of 80 per cent. of the revenue provided for by the county levies and to 100 per cent. of the income that had been added to the funds, so that at the time the warrants in issue

were drawn by the board of county commissioners, and the demand was made upon respondent to sign, seal, and deliver the same, warrants to the extent of 80 per cent. of the levies had already been issued, and the county treasury was without·funds or moneys to meet them. It will thus be seen that, in accord with the statement of counsel for plaintiff in error, the pleadings and agreed statement of facts submit to the court the single issue, namely, Is the limitation of 80 per cent. as fixed by section 1 of chapter 16, Sess. Laws 1895 (section 1683, Comp. Laws 1909), on the issuance of warrants on the various funds a valid and lawful limitation, and was the statute brought over and put in force by virtue of section 2 of the Schedule to the Constitution or was it in conflict with section 26 of article 10 of the Constitution?

The statute in question reads as follows:

"It shall be unlawful for the board of county commissioners to issue any certificate of indebtedness, in any form, in payment of, or representing or acknowledging any account, claim or indebtedness against the county, or to make any contracts for, or incur any indebtedness against the county in excess of eighty per cent. of the tax levied for county expenses during the current year, nor shall any expenditure be made or indebtedness be contracted, to be paid out of any of the funds of said county, in excess of eighty per cent. of the amount levied for said fund. If any such certificate of indebtedness be issued, or any indebtedness be incurred or contracted in excess of eighty per cent. of the tax levied for that purpose for that year, such certificate, contract or debt, shall not be a charge against the county, but may be collected, by civil action, from the board of county commissioners, or either of them, or their bondsmen. All warrants upon the county treasurer shall be issued upon the order of the board of county commissioners, signed by the chairman thereof and attested by the signature of the county clerk, with the county seal attached, and shall designate the fund upon which they are drawn, and each warrant shall specify the amount levied and appropriated to the fund upon which it is drawn and the amount of such funds, at the time expended, and any warrant drawn on such fund, when there are no funds in the treasury for the payment of the same, and eighty per cent. of the amount levied for such fund for the year is exhausted, shall be void as against the county, but may be collected by civil action from the board of

county commissioners and the county clerk, or either of them, or their bondsmen."

It is to be noted that the last sentence of the act renders any warrant drawn on any fund when there are no funds in the treasury for the payment of the same, and 80 per cent. of the amount levied for such fund is exhausted, not only void as against the county, but provides that it may be collected by civil action from the board of county commissioners and the county clerk or either of them or their bondsmen. Under these circumstances, the rule laid down by this court in the case of *Shannon v. State ex rel., post,* 125 Pac. 1106, obtains, and mandamus will not lie to compel the county clerk to comply with the demand made. The agreed statement of facts presents an issue which brings this case squarely within this limitation. This act was construed by the Supreme Court of the territory of Oklahoma in the case of *Huddleston v. Board of Com'rs of Noble Co.,* 8 Okla. 614, 58 Pac. 749. In that case it was held by the court:

"Under the provisions of section 1, c. 16, Sess. Laws 1895, the board of county commissioners have no power to allow a claim and issue a warrant therefor after eighty per cent. of the tax levy for county expenses during the current year has been exhausted, and. hence, where the plaintiff's claim for juror's services was filed and presented to the board of county commissioners for allowance after eighty per cent. of the tax levied for such purposes had been exhausted, a mandamus will not lie to compel the board of county commissioners to allow plaintiff's claim and issue a warrant therefor."

This case is relied on by counsel for plaintiff in error, but it is neither distinguished nor controverted in any particular by either of the counsel for the state.

Nor in our judgment is it of any consequence that the indebtedness upon which this statute operates is fixed by law or is incurred or created by contracts made by the board of county commissioners. Such has been the holding of a great majority of the courts in the construction of similar provisions of other statutes and Constitutions. *Lake County v. Rollins,* 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060; *People ex rel. Seeley v. May,* 9 Colo. 404, 12 Pac. 838; *Barnard & Co. v. Knox County,* 105

Mo. 382, 16 S. W. 917, 13 L. R. A. 244; *Hagan v. Com'rs Court et al.,* 160 Ala. 544, 49 South. 417; *Fiscal Court v. Commonwealth* (Ky) 117 S. W. 301; *Hebard et al. v. Ashland County et al.,* 55 Wis. 145, 12 N. W. 437; *Anderson et al. v. Orient Fire Ins. Co. et al.,* 88 Iowa, 579, 55 N. W. 348; *D County v. Gillett,* 9 Okla. 593, 60 Pac. 277.

The foregoing, however, may be of no consequence, for if the act is found to be repugnant to section 26 of article 10, p. 150, Williams' Ann. Const. Okla., it was not brought over and of course would not be effectual for any purpose. The pertinent portion of the section of the Constitution referred to reads as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose."

It is difficult to make clearer the force and meaning of the language used by any degree of refinement or discussion. It is the contention of counsel for relator, however, that this portion of this section of the Constitution is a grant of power to the municipal subdivisions of the state to become indebted to the amount of the income and revenue provided for the year, and, that being a grant of power, the act of the territorial Legislature under consideration, limiting as it does the amount of indebtedness which could lawfully be incurred, must fall. We cannot so read this language.

Discussing the proper rules for construction of written instruments, and especially Constitutions, Mr. Justice Lamar of the Supreme Court of the United States in the case of *Lake County v. Rollins, supra,* says:

"To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort in all cases is to the natural signification of the words in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must

be accepted, and neither the courts nor the Legislature have the right to add to it or take from it. *Newell v. People,* 7 N. Y. 9, 97; *Hills v. Chicago,* 60 Ill. 86; *Denn v. Reid,* 10 Pet. 524 [9 L. Ed. 519]; *Leonard v. Wiseman,* 31 Md. 201, 204; *People v. Potter,* 47 N. Y. 375; Cooley, Const. Lim. 57; Story on Const. sec. 400; *Beardstown v. Virginia,* 76 Ill. 34.    So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. *United States v. Fisher,* 2 Cranch, 358, 399 [2 L. Ed. 304]; *Doggett v. Florida Railroad,* 99 U. S. 72 [25 L. Ed. 301]. There is even stronger reason for adhering to this rule in the case of a Constitution than in that of a statute, since the latter is passed by a deliberative body of small numbers, a large proportion of whose members are more or less conversant with the niceties of construction and discrimination, and fuller opportunity exists for attention and revision of such a character, while Constitutions, although framed by conventions, are yet created by the votes of the entire body of electors in a state, the most of whom are little disposed, even if they were able, to engage in such refinements. The simplest and most obvious interpretation of a Constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption."

To our minds the simplest and most obvious interpretation of this section of the Constitution is to say that it is here intended to place a limitation upon the authority of the Legislature and other agencies of the state of allowing any of the subdivisions mentioned to create, assume, or incur in any manner or for any purpose any indebtedness in excess of the limitation therein fixed. There is no ambiguity in the section and no language susceptible of the construction that the people of the state, acting primarily or through the Legislature, are restricted in the exercise of the power to limit the amount of indebtedness which may be lawfully assumed in any year, and, this being true, the act in question in no wise conflicts with this constitutional provision, and hence was brought over by the Enabling Act and the Schedule to the Constitution and was, at the time the right of action accrued in this cause, a subsisting valid statute of the state.

The issue in this case arose at the time the demand was made and performance refused. If plaintiff had no cause of action,

then, by reason of the failure of defendant to perform a plain duty, he could not acquire one by virtue of any act which might become effective thereafter. Our statute on mandamus (section 6232, Comp. Laws 1909) provides:

"No other pleading or written allegation is allowed than the writ and answer; these are the pleadings in the case, and have the same effect, and are to be construed and may be amended in the same manner, as pleadings in a civil action; and the issues thereby joined must be tried, and the further proceedings thereon had, in the same manner as in a civil action."

See *Beadles v. Fry et al.*, 15 Okla. 428, 82 Pac. 1041, 2 L. R. A. (N. S.) 855.

The rule generally applicable is stated in the case of *American Bonding & Trust Co. et al. v. Gibson County,* 145 Fed. 871, 76 C. C. A. 155, 7 Ann. Cas. 522, as follows:

"The nonexistence of a cause of action when suit is brought is a fatal defect which cannot be cured by the accrual of a cause while the suit is pending."

The issue joined by the writ and answer, and in no wise changed by the agreed statement, was whether defendant on June 5, 1911, was required by law to sign, seal, and deliver the warrants in question; finding adversely to the contention, it necessarily follows that the judgment of the trial court must be reversed and the cause remanded with instructions to dismiss the same.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., absent, and not participating.