CALIFORNIA-OREGON POWER CO. v. CITY OF MEDFORD et al.

(District Court, D. Oregon. October 4, 1915.)

No. 6494.

1. MUNICIPAL CORPORATIONS ⬤➡46—AMENDMENT OF CHARTER—SUBMISSION TO VOTE.

Where a city ordinance provided that amendments to the charter might be proposed by the city council by ordinance or resolution and be submitted to the voters of the city for approval or rejection, the council could not, by submitting a charter amendment to the electors without resolution, but on motion merely, repeal or supersede a provision in the charter that no franchise should be granted by the city for a longer period than ten years.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 123–125; Dec. Dig. ⬤➡46.]

2. MUNICIPAL CORPORATIONS ☞272—POWER OF COUNCIL—FRANCHISE.

A charter provision that no franchise should be granted for more than ten years constituted a limitation upon the power of the common council to own, buy, sell, and lease property for lighting purposes when authorized by the voters of the city, and applied to the people as well as the council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 727; Dec. Dig. ☞272.]

3. MUNICIPAL CORPORATIONS ☞71—GRANT BY MUNICIPALITY—RATIFICATION BY LEGISLATURE.

A lighting company franchise granted by a city council contrary to charter provisions was not ratified by L. O. L. § 6247, confirming grants of the right to maintain poles and wires located before the passage of the act, the Legislature having no power in the premises, where by Const. art. 11, § 2, municipalities had previously been accorded absolute and sole power to enact and amend or repeal their charter provisions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 175; Dec. Dig. ☞71.]

4. MUNICIPAL CORPORATIONS ☞248—CORPORATE POWERS—ULTRA VIRES ACTS.

Where a city authorized to sell its lighting plant and to lease the same, but not authorized to grant franchises for more than 10 years, contracted to grant a franchise for 25 years and to sell the plant, and received the benefits of such agreement, the city cannot defend against a suit for specific performance on the ground that the agreement was ultra vires.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 684–686; Dec. Dig. ☞248.]

In Equity. Suit by the California-Oregon Power Company against the City of Medford and others for specific performance. Decree for complainant.

This is a suit to enforce in part the specific performance of a contract entered into June 7, 1907, by and between the city of Medford and the Condor Water & Power Company; the complainant having succeeded to all the rights of the Condor Company in and to the contract. Under the contract, the city leased to the company its electric light plant for a term of 25 years, with an option on the part of the company to purchase the plant within 5 years, at the stipulated price of $20,000, and with the further condition that the city might repurchase the entire plant at the end of the term of the lease. And in connection therewith the city attempted to grant to said company by ordinance a franchise for the use of its streets and alleys for erecting and maintaining its electric lighting plant for the term of 25 years. The defendants dispute the validity of the contract and ordinance as being ultra vires and beyond the power of the city to negotiate or adopt.

James R. Tapscott, of Yreka, Cal., A. E. Reames, of Medford, Or., and A. C. Hough, of Grants Pass, Or., for plaintiff.

Gus Newbury and H. D. Norton, both of Medford, Or., for defendants.

WOLVERTON, District Judge (after stating the facts as above). Prior to the time of the adoption of ordinances by the city of Medford for carrying into effect the initiative and referendum powers reserved to the people of the municipalities in pursuance of section 1a, art. 4, of the Constitution of the state, the city council was authorized by charter regulations (section 25, subd. 11, as amended):

"To provide electric or other lights for said city and its inhabitants, and to that end to own, buy, sell, and lease or contract for property, or contract with third parties to furnish the same to the city, or to its inhabitants, and to regulate and control the same and the use thereof; provided, that no purchase, sale, or lease of any light plant or system shall be made by the council until the same shall have been authorized by a vote of the qualified voters of the city at an election held for that purpose."

And (subdivision 29):

"To regulate, control, or prohibit the erection of electric light, telegraph, telephone, or other poles or wires upon or over the streets or alleys, or public parks or buildings of said city, and the laying of water or other pipes and sewers."

The charter contained this further provision:

"Sec. 100. No contract shall be entered into by the city, or any franchise granted by it, for a longer period than ten years, and no franchise shall grant any exclusive right or rights."

By Ordinance No. 124, approved by the mayor March 26, 1907, the city provided the manner in which amendments of the charter might be had. Among other things, it was enacted that amendments to that document might be proposed by the city council by ordinance or resolution, and submitted to the voters of the city for approval or rejection. This ordinance was subsequently amended by Ordinance No. 125, approved by the mayor April 2, 1907, but not as it pertains to the subject in hand.

Ordinance No. 126, by authority of which the city entered into the contract in question, contains the following clause:

"And that the charter of the said city, and all ordinances and parts of ordinances in conflict herewith are hereby repealed in so far as they conflict with the provisions of this ordinance, but no further."

[1] It is urged therefore that the effect of this ordinance was to repeal or supersede section 100 of the original charter in so far as it might have relation to the subject-matter of the controverted contract.

The authority for submitting Ordinance No. 126 to the vote of the people, whatever it was, was given by the city council on May 14, 1907. By reference to the minutes of the council proceedings of that date, we ascertain the manner in which it was conferred. The purpose of the meeting, which was on adjournment from a regular meeting, was:

"To consider propositions for the lease or sale of the electric light plant and to order a special election for the purpose of submitting certain charter amendments, an electric street railway franchise, and the sale of the electric light plant, and such other propositions as the board might deem proper, to the vote of the people for their election or rejection."

It then further appears that the propositions of the Condor Water & Power Company and the Idaho-Washington Light & Power Company were presented and read, and that on motion it was directed that the two propositions be accepted and placed before the people for their ratification or rejection. And it was further ordered:

"That there be a special election held on the 4th day of June, 1907, for the purpose of voting upon certain charter amendments, electric railway

franchises, sale of the city electric light plant, and the propositions of leasing or selling of said light plant to the Condor Water & Power Company and the Idaho-Washington Light & Power Company."

Further it appears that a resolution submitting certain charter amendments to a vote of the people at the special election ordered for June 4, 1907, was presented and read, and on motion the resolution was adopted. This is all the minutes show relative to the submission of Ordinance No. 126 to a vote of the people, and all that they show relative to the adoption of any resolution or ordinance submitting any amendments of the charter or any ordinance to a vote of the people.

An election was held on the day fixed, and by the ballot it is shown that there was "submitted, by order of city council," "ordinance granting electric lighting franchise for 25 years to Idaho-Washington Light & Power Company," and "ordinance granting electric lighting franchise for 25 years to Condor Water & Power Company." The first of these propositions seems to have been rejected, but the latter was adopted by a majority vote.

The question is presented whether the proceedings had by the common council relating to submitting Ordinance No. 126 to a vote of the people, and the subsequent adoption thereof, were effective to supersede section 100 of the original charter, in so far as it inhibits the city from entering into any contract or granting any franchise extending for a longer period than 10 years.

The then city attorney relates that he was requested to prepare, and did prepare, a resolution for use by the council, submitting the proposals of the Condor Water & Power Company and Idaho-Washington Light & Power Company to a vote of the people, in the alternative, the company obtaining the highest vote to be entitled to the franchise; and that the resolution was duly adopted by vote of the council at the said meeting of May 14th. As to this, his recollection seems to be clear and reasonably explicit. On the other hand, the then recorder of the city, who was present at the meeting and recorded the minutes of the proceedings had, is equally emphatic that no resolution of the kind was ever presented to the council for its action, and that none such was acted upon. It is certain that the minutes of the meeting show no such action, and no member of the council was called, nor was the mayor, to dispute the record; nor was such a resolution to be found in the office of the recorder after a thorough search therefor. In view of the testimony, conceding that the oral testimony in the premises was competent, but without deciding, I am bound to conclude that the preponderance is with the record, and that there was no resolution adopted by the common council submitting said ordinance to a vote of the people, although eventually the ordinance went to them for their approval or rejection.

Referring to the record of the proceedings of the council, it is clear that no amendment of the city charter was proposed by the council by ordinance or resolution. All that was done was to submit the proposed ordinance to a vote of the people on a motion only that the two propositions be accepted and placed before the people for their ratification or rejection. The document submitted to the vote of the people purports to be an ordinance, and not an enactment or amendment

to the city charter, and seemingly there was no purpose of amending such charter; the council assuming perhaps that its regulations could be abrogated or avoided by ordinance as well as by adopting express charter regulations. The charter cannot be amended or overridden in this way. The city having provided how the charter may be amended, a substantial compliance with such provisions is requisite to give validity to an enactment of that kind. I conclude therefore that the attempt to obviate the controlling effect of section 100 of the charter was abortive and without avail.

[2] It cannot be successfully maintained that section 100 is not a limitation upon the power accorded the common council by subdivision 11, § 25, of the charter. Nor is it to be construed that such limitation pertains to the city council only, and not to the people, as suggested in counsel's brief. These provisions of the charter are to be construed in pari materia, and the limitations of section 100 are to apply in full force, not only to the city council, but to the people as well, until such regulations are modified or repealed by proper charter amendments regularly adopted.

[3] Nor has there been ratification or validation of the complainant's franchise by virtue of section 6247 of Lord's Oregon Laws, for these reasons: Section 2, art. 11, of the Constitution, was adopted, and became operative June 25, 1906. This clause of the Constitution accorded to municipalities of the state absolute and sole power to enact, amend, or repeal their charter regulations, and thenceforth the Legislature was deprived of all power or authority in the premises. Farrell v. Port of Columbia, 50 Or. 169, 91 Pac. 546, 93 Pac. 254; Farrell v. Port of Portland, 52 Or. 582, 98 Pac. 145.

Section 100 of the city charter is contained in the original charter, and existed and was in force prior to the adoption of the amendment to the Constitution, and the act of the Legislature adopting section 6247, L. O. L., being an amendment of section 4750, B. & C. Comp., became a law in 1911, subsequent to the constitutional amendment. So that the Legislature was at that time without constitutional power to validate or ratify any contract or franchise entered into or granted by the municipality in violation of its charter regulations. The Legislature was without power in the first place to authorize such a charter amendment as it is insisted was adopted in the case at bar, and hence was without authority to validate or ratify the same.

I am of the opinion that, while ordinance 126 is invalid as a charter amendment or regulation, it is good as an ordinance, save as it attempts to modify the effect of section 100, as being adopted in pursuance of sections 6 and 11 of Ordinance 124, or 125, which sections provide for submitting any measure filed with the recorder to be submitted to the people, either by the city council or by initiative or referendum petition, to a vote of the people, and declaring that any such measure as is approved by a majority vote of those voting thereon shall be in full force and effect from and after the date of the proclamation declaring the vote.

[4] Now, the situation resolves itself to this: The city was authorized to sell its plant and to lease the same, but it was not authorized

to enter into any contract, or to grant any franchise, running for a longer time than ten years.

Were it not for the presumption that the parties would not have entered into the contract but for the fact that it was supposed that the Condor Company was getting a franchise for the term of 25 years, I would be inclined to hold that the contract was good for a time limit of 10 years, or pro tanto according to the length of time the parties have acted under it without question of its validity. But, as I cannot say that the parties would have adopted the contract with a time limit of 10 years only, I am not reconciled to so holding. Nor do I conceive that the contract is divisible, so that one part of it may be enforced and the other not. Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518. But upon principle, where a contract has been fully or in part executed, although ultra vires or illegal, but not malum in se nor attended with criminal liability, it should be enforced so far as executed, especially where the parties cannot be reinstated to their first relations.

"The doctrine of utra vires, when invoked for or against a corporation," says the Supreme Court, "should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693.

See, also, Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378.

And having received and accepted the benefits of the agreement, the city will not be heard to say that the agreement was made in an illegal manner, or that it was beyond its power to negotiate. City of Colorado Springs v. Colorado City, 42 Colo. 75, 94 Pac. 316.

Predicated upon these principles, it is my opinion that the city should be held to the contract so far as executed and fully observed on the part of the complainant. Furthermore, that the complainant is entitled to its purchase of the plant, and a decree against the city requiring a conveyance. The tender made of the $20,000 was amply sufficient, especially in view of the fact that the city afterwards acknowledged that one had been made, and requested another deposit of the funds. When, however, it requested another deposit, the city had become indebted to complainant in a large sum of money, and the complainant now proffers in its pleadings to pay to the city any balance that might remain, over and above what the city owes it, of the $20,000. The tender is therefore sufficient in equity, considering the attendant circumstances. The city was not entitled to receive the 5 per cent. of the gross earnings provided for by the contract after the date of the tender, to wit, June 5, 1912.

I find that the city was indebted to complainant, under the contract, on June 1, 1914, in the sum of $17,606.63. The complainant is also entitled to credit for any further sum that has accrued for street lighting rendered the city under the contract to the date of the entry of the decree herein. If the aggregate exceeds $20,000, the complainant will have a decree against the city for a conveyance of the plant covered by the contract, and for any balance that may remain due the complainant over and above the $20,000. But if the aggregate does

not equal the $20,000, then, upon payment of such balance, the complainant will have a decree for the conveyance of the plant; the complainant to recover the costs and disbursements of the suit.

If the parties cannot agree upon the further accounting, the court will hear them, or will refer the cause to the master.