VINCENNES BRIDGE CO. v. BOARD OF COUNTY COM'RS OF ATOKA
COUNTY, OKL.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1917.)

No. 4845.

1. COURTS ⬤366(8)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE
COURTS.

The national courts uniformly follow the construction of the Constitution and statutes of a state, announced by its highest judicial tribunal, in all cases that involve no question of general or commercial law, and no question of right under the national Constitution or acts of Congress; and the character and limits of the powers and liabilities of the municipal and quasi municipal corporations of a state are generally questions of state or local law.

2. COUNTIES ⬤150(1)—INDEBTEDNESS—CONSTITUTIONAL AND STATUTORY
LIMITATIONS.

Const. Okl. art. 10, § 19, requires every resolution and ordinance by a county levying a tax to specify distinctly the purpose for which the tax is levied, and declares that no tax levied and collected for one purpose shall ever be devoted to another, one. Section 26 provides that no county shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose. Comp. Laws Okl. 1909, § 1683, provides that "it shall be unlawful for the board of county commissioners to issue any certificate of indebtedness, * * * or to make any contracts for or incur any indebtedness against the county in excess of eighty per cent. of the tax levied for county expenses during the current year, nor shall any expenditures be made or indebtedness be contracted, to be paid out of any of the funds of said county, in excess of eighty per cent. of the amount levied for said fund." Held, that, under the decisions of the Supreme Court of the state that such constitutional provisions are not a grant of power to counties, but a limitation on the power of the Legislature, section 1683 of the statutes, being within such limitation, is valid, and a board of county commissioners is without authority to contract for an indebtedness in excess of 80 per cent. of the special fund applicable to its payment.

3. COUNTIES ⬤223—INDEBTEDNESS—ACTION AGAINST COUNTY.

In an action to enforce such a contract, illegal because its execution is beyond the powers of the county commissioners, it is immaterial what use the county made of the fund.

4. COUNTIES ⬤130—RECOVERY OF PAYMENT BY COUNTY.

Although contracts by a county for bridges were unenforceable, because they created an indebtedness in excess of the current levy for the road and bridge fund, which was prohibited by the state Constitution and statutes, payments made thereon in a subsequent year, after the bridges had been built and accepted, and from funds of another levy which could be legally used for the purpose, were not without consideration, and cannot be recovered by the county.

5. PAYMENT ⬤82(1)—RECOVERY—ACTION—NATURE AND GROUNDS OF OBLIGA-
TION.

An action to recover money paid voluntarily will lie only where equity and good conscience require the return of the money.

6. COUNTIES ⬤111(2)—POWERS—CONTRACTS ULTRA VIRES.

Under a constitutional provision, which prohibits county commissioners from contracting an indebtedness in excess of the levy made for the

fund applicable to its payment, the validity of such a contract does not arise from want of corporate power in the county to make it, but from the failure of the commissioners to make prior provision for its payment.

7. COUNTIES ☞130—RECOVERY OF PAYMENTS—INVALIDITY OF CONTRACT.

Where a contract by a county or city is prohibited by law, so that the county or city cannot make it by any means at its command, and it has paid money under such a contract, without receiving any benefit therefrom, such money may be recovered back; but, where the county or city has the corporate power to make a contract, the object of which is legitimate, but the contract is invalid because the officers fail to pursue methods which are within their power and prescribed by law to render it valid, and the contract has been executed, the county or city, which retains the benefit, cannot recover money paid thereon.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action at law by the Vincennes Bridge Company against the Board of County Commissioners of Atoka County, Okl. From the judgment, plaintiff brings error. Modified.

The Vincennes Bridge Company made and performed two contracts with the board of commissioners of Atoka county to build some bridges for it. One contract was made on September 28, 1908, and the agreed price of the bridge was $14,830. The other was made on June 11, 1909, and the agreed price was $2,670. The Bridge Company performed the contracts, the county accepted the bridges, and there became due to the Bridge Company, according to the terms of the contracts, $17,500. The county has paid the Bridge Company $9,908.50 and has refused to pay it any more on the ground that the contracts were illegal, because they were attempts to create in the fiscal year commencing July 1, 1908, and ending July 31, 1909, without the assent of three-fifths of the voters of the county, an indebtedness to an amount in excess of the income and revenue provided for that year in violation of sections 19 and 26 of article 10 of the Constitution of Oklahoma. Section 19 requires every resolution and ordinance passed by any county levying a tax to specify distinctly the purpose for which said tax is levied, and declares that no tax levied and collected for one purpose shall ever be devoted to another one. Section 26 provides that no county "shall be allowed to become indebted, in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose." Revised Laws of Oklahoma 1910, p. clviii, clix. Section 1683, Compiled Laws of Oklahoma 1909, which was in force when these contracts were made, provides that "it shall be unlawful for the board of county commissioners to issue any certificate of indebtedness, * * * or to make any contracts for, or incur any indebtedness against the county in excess of eighty per cent. of the tax levied for county expenses during the current year nor shall any expenditures be made or indebtedness be contracted, to be paid out of any of the funds of said county, in excess of eighty per cent. of the amount levied for said fund. If any such certificate of indebtedness be issued, or any indebtedness be incurred or contracted in excess of eighty per cent. of the tax levied for that purpose for that year, such certificate, contract or debt, shall not be a charge against the county, but may be collected, by civil action, from the board of county commissioners, or either of them, or their bondsmen." On September 28, 1908, before the contract of that date was made, the board of county commissioners made a levy of 1.7 mills on the dollar of the assessed value of the property of the county for roads and bridges which, if collected, would have raised $6,892.80, and made other levies for specified purposes which, together with the levy for roads and bridges would, if collected, have raised $34,464, to "defray," as the levy resolution recited, "the expenses of the year 1908 ending July 1, 1909, also to pay the deficit of the

fiscal year ending July, 1908." The court below held that under sections 19 and 26 of the Constitution the two contracts were beyond the powers of the board of county commissioners in so far as they exceeded in amount the $6,892.80 levied for roads and bridges in September, 1908, and rendered a judgment against the Bridge Company for $3,015.70, the difference between the $6,892.80 levied for roads and bridges and the $9,908.00 paid to the Bridge Company by the county. The Bridge Company questions this result by its writ of error.

William T. Hutchings, of Muskogee, Okl., for plaintiff in error.
Baxter Taylor and Ira J. Banta, both of Atoka, Okl., for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). [1] The national courts uniformly follow the construction of the Constitution and statutes of a state announced by its highest judicial tribunal in all cases that involve no question of general or commercial law and no question of right under the national Constitution or the acts of Congress. The character and limits of the powers and liabilities of the municipal and quasi municipal corporations of a state are generally questions of state or local law. Claiborne County v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489, 28 L. Ed. 470; Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012, 34 L. Ed. 260; Madden v. Lancaster County, 65 Fed. 188, 192, 12 C. C. A. 566, 570; Blaylock v. Incorporated Town of Muskogee, 117 Fed. 125, 126, 54 C. C. A. 639, 640.

[2] Counsel for the Bridge Company assert that under a correct construction of sections 19 and 26 of the Constitution of Oklahoma the entire income and revenue provided for the year 1908–1909 by the levy of September 1908, to wit, $34,464, was the measure of the indebtedness the county might contract under these sections, and that, as the aggregate amount of the two contracts fell within that limit, the court below erred in holding them void on the ground that their amount exceeded the $6,892.80 levied for road and bridge purposes, and he cites these decisions of the Supreme Court of Oklahoma, which he argues sustain this contention: Buxton & Skinner Stationery Co. v. Bd. of Com'rs (Okl.) 155 Pac. 215; Bd. of Com'rs v. Smartt (Okl.) 158 Pac. 601, L. R. A. 1916F, 892; In re Town of Afton, 43 Okl. 720, 144 Pac. 184, L. R. A. 1915D, 978; O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okl. 738, 124 Pac. 19; Campbell v. State, 23 Okl. 109, 99 Pac. 778. All these cases have been carefully examined. But in Kerr, County Clerk, v. State ex rel. Wimbish, 33 Okl. 110, 112, 114, 115, 124 Pac. 284, a petition for mandamus upon the county clerk to issue warrants on certain claims was presented. He answered that these claims were in excess of 80 per cent. of the levy for that year for the specific fund applicable to their payment, and hence violative of section 1683 of the statutes of Oklahoma. Sections 26 and 19 of the Constitution of Oklahoma were in force when these claims accrued and when this petition was presented, the petitioner replied that section 1683 was void because it was in conflict with section 26 of the Constitution, which fixed the limit of indebtedness at the entire income and revenue levied and provided for the year for all funds and therefore

was not brought over to the state by the enabling act. But the Supreme Court, speaking of the provision of section 26, said:

"It is difficult to make clearer the force and meaning of the language used by any degree of refinement or discussion. It is the contention of counsel for relator, however, that this portion of this section of the Constitution is a grant of power to the municipal subdivisions of the state to become indebted to the amount of the income and revenue provided for the year, and, that being a grant of power, the act of the territorial Legislature under consideration, limiting as it does the amount of indebtedness which could lawfully be incurred, must fall. We cannot so read this language. * * * To our minds the simplest and most obvious interpretation of this section of the Constitution is to say that it is here intended to place a limitation upon the authority of the Legislature and other agencies of the state of allowing any of the subdivisions mentioned to create, assume, or incur in any manner or for any purpose any indebtedness in excess of the limitation therein fixed."

And the court proceeded to hold that section 26 did not restrict the power of the Legislature to fix a lower limit of indebtedness than that specified in that section. In Haskins & Sells v. Oklahoma City, 36 Okl. 57, 66, 126 Pac. 204, 208, the Supreme Court of Oklahoma, speaking of this decision, said:

"In Kerr, County Clerk, v. State ex rel. Wimbish, County Atty., 33 Okl. 110, 124 Pac. 284, in an opinion by Justice Dunn, this court held that the act of 1885, fixing the indebtedness which counties may incur at 80 per cent. of the tax levy, is not repugnant to section 26, art. 10, of the Constitution (section 291, Williams' Ann. Const. Okla.), fixing the maximum limit at a higher rate. The question presented in the case supra, was whether the limitation fixed by the Constitution was a grant of power which the Legislature could not prevent counties or subdivisions of the state from reaching, or whether it was merely a maximum limit within which the Legislature might fix a lower maximum, but could not prescribe a limit beyond or in excess of that fixed by the Constitution. The court held it to be a limitation upon the authority of the Legislature to allow counties or other subdivisions of the state to become indebted beyond the limit therein prescribed and not a limitation upon its authority to fix a limit within the maximum prescribed by the Constitution. This holding is in thorough accord with our views on the question presented."

In the case of In re Town of Afton, 43 Okl. 720, 144 Pac. 184, L. R. A. 1915D, 978, the Supreme Court of Oklahoma held that an indebtedness incurred in excess of the entire income and revenue provided for the year was violative of section 26 and therefore unenforceable. If these three decisions do not indicate with sufficient certainty the opinion of the Supreme Court of Oklahoma upon the question whether sections 26 and 19 of the Constitution fix a limit of indebtedness at the total income and revenue provided for the year, it is not so indicated, for none of its other decisions expressly decide that question, or come so near it as the three which have been last referred to. In this state of the case the opinion of the majority of the court, in which the writer is unable to concur, is that sections 26 and 19 limit such indebtedness to the amount of the levy for the special fund applicable to the payment of the specific debt in question.

However that may be, the Supreme Court of Oklahoma has directly decided that under a statute substantially identical with section 1683, which expressly prohibits the board of commissioners from making any expenditures or contracting any indebtedness to be paid

out of the funds of the county in excess of 80 per cent. of the amount levied for the specific fund, unless a greater amount has been collected, a contract for an indebtedness in excess of 80 per cent. of the special fund, applicable to its payment, is beyond the powers of the board of commissioners of the county and unenforceable (Haskins & Sells v. Oklahoma City, 36 Okl. 57, 59, 60, 71, 72, 126 Pac. 204), and the conclusion is that the Bridge Company could not maintain its action on the contracts for the balance due to it according to their terms in view of this decision.

[3] The second objection to the judgment is that it was necessary for the county to show that at the time this suit was brought all of the income and revenue for the fiscal year in which these contracts were made had been expended or appropriated to other proper objects and that it failed to do so. But if the contracts were unenforceable because their execution was beyond the powers of the board of county commissioners when they were made, the condition of the income and revenue for the fiscal year 1908–1909, and its relation to the expenditures and applications thereof prior to and at the time of the commencement of the suit, were immaterial. It was the aggregate amount of the levy for roads and bridges for the fiscal year 1908–1909, and the amount of cash and other assets available to pay the debts created in that year by these contracts, at the respective times when those debts were incurred and the contracts were made, respectively, that determine whether or not the contracts were legal. Haskins & Sells v. Oklahoma City, 36 Okl. 57, 71, 126 Pac. 204; Huddleston v. Bd. of Com'rs, 8 Okl. 614, 58 Pac. 749; O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okl. 738, 124 Pac. 19; Buxton & Skinner Stationery Co. v. Bd. of Com'rs (Okl) 155 Pac. 215. And there was sufficient evidence before the court below that neither on September 28, 1908, when the first contract was made, was there such an aggregate amount available to pay the debt created thereby, nor on June 11, 1909, when the second contract was made, was there an aggregate amount available sufficient to discharge the debt created by that agreement. Oklahoma became a state of the Union on November 16, 1907, and the county then had no funds or levy to be expended for roads and bridges during the remainder of that year. The parties to this action stipulated that in April, 1908, the county borrowed from the state $24,000, that $5,000 of this sum was appropriated for roads and bridges for the fiscal year ending June 30, 1908, that this sum was expended before the beginning of the year 1908–1909, and that the board, in making its levy of September 28, 1908, recited and declared that this levy was made to defray the expenses of the year 1908, ending July 1, 1909, and also to pay the deficit of the fiscal year ending July, 1908. This stipulation sufficiently indicates the absence of sufficient funds available for the road and bridge fund during the fiscal years 1908 and 1909 to discharge the contracts.

[4] The third complaint of the judgment is that the court below permitted the county to recover of the Bridge Company the difference between the $6,892.80 levied by the board in September, 1908, and the $9,908.50, which the county paid to the city for the bridges which,

according to the terms of the contracts, were worth $17,500. It was indispensable to the maintenance of the county's claim to recover this difference, $3,015.70, that it should establish, by a fair preponderance of the evidence, the fact that at the time this $3,015.70, which it seeks to recover back, was paid, there was, as it alleged, "no contract or consideration for its payment to the Bridge Company," and it has failed to make that proof. There was, as has been stated, evidence sufficient to warrant the finding that on September 28, 1909, the levy of $6,892.80 was the only amount then provided to pay for the bridges. But this $3,015.70 was not paid by the county until after the bridge specified in the first contract for which the county was, according to the contract, to pay $14,830 was completed. The contract of September 28, 1908, was that this bridge should be finished by April 1, 1909. It was built by the Bridge Company and accepted by the county. On April 7, 1909, the county issued to the Bridge Company its warrant for $4,000, on October 19, 1909, it issued its warrant to the Bridge Company for $3,908.50 and on September 7, 1910, it issued its warrant to the Bridge Company for $2,000, and these warrants, aggregating $9,908.50 and $212.50 interest, were paid by the county prior to September 29, 1913. Now, while the limit of indebtedness which the board could incur in September, 1908, without another levy, was $6,982.80, yet when the warrant for $3,908.50 was issued the levy for roads and bridges for the year 1909–1910 was available to pay that warrant, and when the warrant for $2,000 was issued the levy for 1910–1911 was available to pay that warrant. Moreover, any unappropriated cash in the treasury and any balance in the special funds remaining after claims justly chargeable thereto, were also available for that purpose. Section 1682, Compiled Laws of Oklahoma 1909.

Conceding that the contract of September, 1908, was illegal and that the county was not indebted under it, nevertheless the board of commissioners had the right and the power to make the necessary levies in September, 1909, and September, 1910, to buy of the Bridge Company and to pay it for this bridge, which the county had procured from it, had accepted, and was using. These county warrants are prima facie evidence that they were lawfully issued for the discharge of valid claims, and in the face of the stipulation that they were issued and paid the burden was upon the county to prove that they were not issued for such a claim, or that at the time of their issue or payment there were no taxes levied, cash, or other available assets applicable to their payment. Johnson v. County Com'rs, 7 Okl. 686, 689, 691, 56 Pac. 701. The county failed to carry this burden, and is not entitled to recover back this $3,015.70 for that reason. There are, however, broader and more compelling reasons why it may not have this recovery.

[5] The county set up in its answer a claim to recover the entire $9,908.50 it had paid for the bridges, "for the reason that there was no contract or consideration of any nature" therefor. The court below concluded that, inasmuch as there was a levy of $6,892.80 and the county could have incurred a valid debt for that amount for

the bridges, and as the bridges it had obtained were worth $17,500, it was unjust and inequitable to permit it to recover back this $6,892.80. The county has sued out no writ of error, and this conclusion stands unchallenged.   Is it not also unjust and inequitable to permit it to recover the balance of the $9,908.50 it paid for the bridges?  If it does not pay back this $3,015.70, the Bridge Company will have lost and the county will have gained $7,591.50, the difference between $17,-500 and $9,908.50, by this transaction.   What justice or equity is there in increasing the county's gain and the Bridge Company's loss by $3,015.70 more?   In Cary v. Curtis, 44 U. S. (3 How.) 235, 246 (11 L. Ed. 576), the Supreme Court said:

"The action of assumpsit for money had and received, it is said by Lord Mansfield, Burr, 1012, Moses v. Macfarlen, will lie in general whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by the ties of natural justice and equity to refund.  And by Buller, Justice, in Stratton v. Rastall, 2 T. R. 370, 'that this action has been of late years extended on the principle of its being considered like a bill in equity.  And therefore, in order to recover money in this form of action the party must show that he has equity and conscience on his side, and could recover in a court of equity.' "

In Bradley Lumber Co. v. Bradley County Bank, 206 Fed. 41, 45, 124 C. C. A. 175, 179, Judge Smith, delivering the opinion of this court, said:

"This was an action which at common law would have been assumpsit for money had and received.  While this was an action at law, it was based upon the broad equities of the plaintiff.  Such an action would lie if the defendants had received money, the property of the plaintiff, under such circumstances as to be obliged by natural justice, good conscience, right, and equity to refund.  * * * In such cases, if the defendant may in good conscience retain the money in his hands, there can be no recovery.  Barr v. Craig, 2 Dall. 151, 1 L. Ed. 327; Morris v. Tarin, 1 Dall. 147, 1 L. Ed. 76."

In the last case the court said:

"This is a liberal kind of action, and will lie in all cases where by the ties of natural justice and equity the defendant ought to refund the money paid to him; but where the party might with a good conscience receive the money, and there was no deceit or unfair practice in obtaining it, although it was money which the party could not recover by law, this action has never been so far extended as to enable the party who paid the money voluntarily, to recover it back again.  The case of Lowrey v. Bourdieu, in Doug. 452, and that of Farmer v. Arundel, in 2 W. Black. 825, are full to this point."

In Barr v. Craig, 2 Dall. 151, 153 (1 L. Ed. 327), Mr. Justice Bradford said:

"This is an equitable action; the defendant, under the general issue, may go into all the equity of the case; and unless it appears that he cannot in conscience and equity retain the money, unless, ex aequo et bono, he is bound to refund it, the verdict must be for him."

Here is the principle which ought to determine this case.   While the Bridge Company could not have recovered this $3,015.70 by an action at law because the county failed to comply with the provisions of the statute as to the method of making the contract, yet, since the county has paid it, it cannot recover it back because it has received,

accepted, and is using, and has never tendered or offer to return, the bridges, worth $17,500, built by the Bridge Company, and has paid it only $9,908.50, therefore, in justice, equity, and good conscience, the Bridge Company may keep the $3,015.70, because it would be inequitable and unjust to take this money from it and give it to the county, and thereby increase the gain of the latter and the loss of the former by that amount. The county in this case is in the same situation as one who has paid his debt after it was barred by the statute of limitations. Having paid his money in discharge of an unenforceable moral obligation, the courts may not aid him to recover it. The county's cause of action is in reality an equitable action, an action for money had and received, whether stated in an action at law or in a suit in equity, and it is governed by the rules and principles of equity, which have been cited and which forbid its maintenance.

Counsel argue, however, that both parties in this action, violated the law and made an illegal contract. If so, when an illegal agreement has been made and both parties are equally at fault, neither a court of equity nor a court of law will grant relief to either. But these parties were not equally at fault. The prohibition of the law which made the contracts unenforceable was against the county, not against the Bridge Company. It declared that it should be unlawful for the county to incur any debt in excess of the levy it made for the special fund and its other assets available to pay it, and while the Bridge Company was chargeable with notice of the county's disregard of the law the primary duty to obey it, and to make a lawful levy and a lawful contract, was upon the county, and it was the main wrongdoer. Louisiana v. Wood, 102 U. S. 294, 298, 26 L. Ed. 153; Parkersburg v. Brown, 106 U. S. 487, 503, 1 Sup. Ct. 442, 27 L. Ed. 238. Having violated the law, secured, accepted, and kept the bridges, and paid less than two-thirds of their value, it appeals to the conscience of the chancellor to pay back $3,015.70 and inflict still greater loss upon the Bridge Company. But "he who has done inequity cannot have equity," and "he who comes into a court of equity must come with clean hands."

Again:

"A court of equity can act only on the conscience of a party; if he has done nothing that taints it, no demand can attach upon it, so as to give any jurisdiction." Boone v. Chiles, 10 Pet. 177, 210 (9 L. Ed. 388).

If this $3,015.70 was received by the Bridge Company, it undoubtedly supposed, as did the county, that the contracts were valid. It had built the bridges worth $17,500, and they had been accepted by the county. In consideration of those bridges, which the county still has, it paid the Bridge Company $3,015.70 in part payment for them, and the Bridge Company received it. There is certainly nothing in this transaction to taint the conscience of the Bridge Company, nothing unjust or inequitable in its acts, and there is no equity, but much inequity, in the claim of the county to recover back this payment.

[6] Counsel for the county argue, however, that it may recover back this $3,015.70, because the contracts were beyond the powers of the board and in violation of the prohibition of the creation of a debt

or the making of a contract in excess of the levy for roads and bridges and the other assets of the county applicable to the payment of such debts; and they cite City of Geneseo v. Gas Co., 55 Kan. 358, 40 Pac. 655; People v. Fields, 58 N. Y. 491; Kint v. Dithridge, etc., Cut Glass Co., 5 O. C. D. 107; Salt Creek Township v. King Iron Bridge & Mfg. Co., 51 Kan. 520, 33 Pac. 303; Griffin v. City of Shakopee, 53 Minn. 528, 55 N. W. 738; Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737. But the case in hand differs from those cases and others of like character, in that the contracts in this case were not beyond the powers of the corporation, but were within its powers, and their invalidity was due to the neglect of the board to make such prior provision as it could have made for their payment; the contracts were not violative of public policy; they were not malum in se, but the mere way in which the board made them was forbidden; the county has received and keeps the consideration, the bridges, worth more than 150 per cent. of the $9,908.50 it has paid; by its failure to challenge by writ of error the judgment of the court that it cannot recover back the $6,892.80 it concedes the inequity of its claim to recover that amount, and its claim to recover the $3,015.70 is not less inequitable; it paid this $3,015.70 to the Bridge Company after the bridges were built and accepted; and it does not return or offer to return the bridges.

There is no such case among the authorities cited for the county, nor has any such case been found, where a like recovery has been permitted in the face of equities so compelling in favor of the defendant. In the first case cited for the county (City of Geneseo v. Gas Co., 55 Kan. 358, 40 Pac. 655) the city recovered the proceeds of its bonds issued to discharge its contract to become a stockholder in a mining corporation, a contract that was beyond its corporate power, and, because it could not be a stockholder, and had therefore received no consideration for its bonds it was permitted to recover back the money it paid for them. In the Fields Case the recovery was granted because the city received no consideration whatever for moneys to the amount of about $500,000, which it paid out to those who had no legal or equitable claim against it. People v. Fields, 58 N. Y. 491, 499, 501, 503. In the cases of Shakopee and Chaska those cities recovered because they had paid their money upon contracts beyond their corporate power, contracts to pay manufacturing companies moneys in order to bring their plants and business from other places to those cities and there to operate them. Chief Justice Gilfillan said:

"It is conceded that the contract was invalid; that it was beyond the power of the corporation, and, a fortiori, of any officer of the corporation, to make such a contract. * * * It had no authority to make it; no one of its officers, nor all of them together, had authority to make it. The case stands in law as it would, had some person, not connected with the city government, taken the money from its treasury, and paid it to defendants."

But he added, and here is the controlling difference between these cases and those of like character and the one in hand:

"It may be different in a case where the payment is for a legitimate purpose, within the power conferred on the municipal corporation, and is made by an officer, or upon the direction of an officer, who has authority to de-

termine whether some condition precedent to the authority of the paying officer to pay has been complied with."

The payments to the Bridge Company were made by the treasurer of the county on county warrants issued and delivered to it after the bridges were built and accepted by the county. They were made for the building of bridges, for a legitimate purpose to accomplish which the county had plenary corporate power.

[7] Where a contract is beyond the powers of a corporation, so that it cannot make it by any means at its command, where it is malum in se, and where it is prohibited by law under a penalty which renders its making a penal offense, a county or city which has paid money under it without receiving any benefit therefrom may recover that money back. But where a county or city has the corporate power to make a contract, the object of which is legitimate, but the contract is invalid, so that it cannot be legally enforced, because the officers of the county, who had the power by pursuing the methods prescribed by law to accomplish the object of the contract, fail to pursue those methods, and for that reason the contract is invalid, and it has been executed, the county or city has accepted and holds the benefit of its execution, and has paid therefor in part, it may not, while it retains that benefit, recover back the money it has paid. San Francisco Gas Co. v. City of San Francisco, 9 Cal. 453, 469, 470; Pimental v. City of San Francisco, 21 Cal. 352, 361, 362, 363, 366; Brown v. City of Atchison, 39 Kan. 37, 46, 54, 17 Pac. 465, 7 Am. St. Rep. 515; Parkersburg v. Brown, 106 U. S. 487, 500, 501, 503, 1 Sup. Ct. 442, 27 L. Ed. 238; Chapman v. County of Douglas, 107 U. S. 348, 355, 356, 357, 2 Sup. Ct. 62, 27 L. Ed. 378; Hitchcock v. Galveston, 96 U. S. 341, 350, 351, 24 L. Ed. 659; Louisiana v. Wood, 102 U. S. 294, 298, 26 L. Ed. 153; Logan County National Bank v. Townsend, 139 U. S. 67, 68, 74, 11 Sup. Ct. 496, 35 L. Ed. 107; Aldrich v. Chemical National Bank, 176 U. S. 618, 628–629, 20 Sup. Ct. 498, 44 L. Ed. 611; Geer v. School District No. 11, 111 Fed. 682, 684, 685, 686, 690, 49 C. C. A. 539; Fernald v. Town of Gilman (C. C.) 123 Fed. 797, 800; Illinois Trust & Sav. Bank v. City of Arkansas City, 76 Fed. 271, 293, 22 C. C. A. 171, 34 L. R. A. 518; California-Oregon Power Co. v. City of Medford (D. C.) 226 Fed. 957, 961, 962; Chelsea Savings Bank v. City of Ironwood, 130 Fed. 410, 411, 66 C. C. A. 230; Bangor Savings Bank v. City of Stillwater (C. C.) 49 Fed. 721.

In Railway Co. v. McCarthy, 96 U. S. 258, 267 (24 L. Ed. 693) the Supreme Court said:

"The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

In Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 60, 11 Sup. Ct. 478, 488 (35 L. Ed. 55) the Supreme Court said:

"A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the

parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it."

The construction of the bridges described in the contracts was within the corporate power of the county. The board of commissioners had the power to purchase or contract for these bridges (section 1671, Revised Statutes of Oklahoma 1909), to levy taxes to pay for them, but in making its contracts it was forbidden to make a contract at any given time in excess of the levy for roads and bridges plus the other assets of the county available for its discharge. It is conceded that the board had the power to make the levy of $6,892.80 for the fiscal year 1908–1909 and to apply it to the payment of the bridges. By dividing the work of constructing the bridges into three parts, limiting its first contract to one-third of the bridges in value, making a like levy and contract in each of the fiscal years 1909–1910 and 1910–1911, it could have lawfully contracted for or purchased the bridges without the vote of the electors. It might have refrained from contracting debts chargeable to other funds to such an extent that there would, at the end of the fiscal year 1908–1909, have been a surplus from those funds sufficient to discharge the contracts it made. Probably it could have borrowed money, as it did in the preceding year, and have applied that money to discharge the contract. So it is that this is a case in which without a vote of the electors the board could have lawfully obtained the bridges for the county and have lawfully bound it to pay for them, and the only reason why its contract for them is unenforceable is that it did not comply with the laws made for its government which it was its duty to observe.

In San Francisco Gas Co. v. City of San Francisco, 9 Cal. 453, 470, the city defended an action for $18,188 for gas furnished to it on the ground that no obligation or liability of the city could be created without the passage of a proper ordinance, and no such ordinance had been passed. Justice Field, afterwards Mr. Justice Field of the Supreme Court, said:

"The obligation to do justice rests equally upon it as upon an individual. It cannot avail itself of the property or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject."

And he affirmed a judgment against the city. If the city had paid to the gas company a part of the $18,188, and had then brought a suit for money had and received, its cause would have been on all fours with the claim in hand, and there is no doubt what its fate would have been.

In Pimental v. City of San Francisco, 21 Cal. 352, 361, 362, 363, 366, the passage of an ordinance was indispensable under the city charter to empower the mayor and joint committee on legal claims to sell certain parcels of real estate of the city at public auction. The mayor and committee, however, sold the lots to various holders, who paid the purchase prices therefor to them, and they paid them into the city treasury, and the city gave conveyances of the respective parcels. These conveyances were void and gave no title, and the bidders

brought actions against the city to recover back their money or its equivalent. The city defended on the ground that the entire transaction was illegal and void, that the committee was not authorized to make the sale, or to receive the money, or to pay it over to the city, and therefore the city was under no obligation to return it. Chief Justice Field said:

"The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city obtain the money of another by 'mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property, which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. Argenti v. San Francisco, 16 Cal. 282. The legal liability springs from the moral duty to make restitution. And we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics; its command always is to do justice."

In Parkersburg v. Brown, 106 U. S. 487, 500, 501, 503, 1 Sup. Ct. 442, 455 (27 L. Ed. 238), the city under a void law and against public policy issued and loaned its bonds to M. to the amount of $20,000 to aid him in carrying on a manufacturing business, and he mortgaged his real and personal property to secure the payment to the city of the interest and principal of the bonds, and the city sold the bonds to A. and B. The court held the bonds void, and thereupon the bondholders brought a suit in equity to recover the mortgaged property which the city had taken over after the mortgagor failed to pay the interest on the bonds, and the court granted the relief sought and said:

"The property was transferred under a contract which was merely malum prohibitum, and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received."

In Chapman v. County of Douglas, 107 U. S. 348, 355, 356, 357, 2 Sup. Ct. 62, 69 (27 L. Ed. 378) the authority of the county commissioners to purchase a poor farm was limited to a purchase at such a price, payable in such installments as could be discharged by a tax of 1 per cent. per annum. They contracted for and obtained a deed for such a farm upon the payment by the county of $2,000 cash and its agreement to pay $6,000 in four equal annual payments, evidenced by its promissory notes and secured by its mortgage on the poor farm. The $2,000 was paid; the county delivered its note and mortgage and took possession of the property. The amounts and times of payment were such that they could not be met by an annual tax of 1 per cent., and the contract, the notes and mortgage, were held illegal and void. Thereupon Chapman, the representative of the owners of the notes and mortgage, brought his suit to recover the land. The city defended on the ground that as the entire transaction was illegal and the parties could not be put in statu quo the court should grant no relief. But the Supreme Court held that as the board had the power to buy the farm, and the contract, notes, and mortgage were void because the board contracted to buy it and to pay for it by instruments, the note

and mortgage, and at times that they could not lawfully agree to pay for it, to wit, prior to the times when the 1 per cent. annual tax could be raised to meet the indebtedness, the plaintiff was entitled to recover the farm on equitable terms, and said of the contract:

"It was not illegal in the sense of being prohibited as an offense; the power in that form was simply withheld. The policy of the law extends no further than merely to defeat what it does not permit, and imposes upon the parties no penalty. It thus falls within the rule, as stated by Mr. Pollock, in his Principles of Contract, 264: 'When no penalty is imposed, and the intention of the Legislature appears to be simply that the agreement is not to be enforced, then neither the agreement itself nor the performance of it is to be treated as unlawful for any other purpose.'"

In Geer v. School District No. 11, 111 Fed. 682, 684, 685, 687, 692, 49 C. C. A. 539, 541, 542, 544, 549, the statutes prohibited the creation of any debt by a school district by a loan in any form unless approved by a majority of its qualified taxpayers, and also forbade the creation of an aggregate bonded indebtedness in excess of 3½ per cent. of the assessed value of the property in the district. The qualified taxpayers voted to issue bonds to build the schoolhouse. The school district issued and sold the bonds and used the proceeds to construct a schoolhouse, which it retained and held. The bonds made the bonded indebtedness more than 3½ per cent. of the assessed valuation of the property of the district, and when the bondholder sued upon them this court denied him any recovery, and held that the bonds were illegal and void. He then sued the district to recover the money he paid to it for the bonds and recovered.

Because the city failed to prove that at the time the $3,015.70 was paid to the Bridge Company in satisfaction of the warrants it had issued the payment was illegal; because the county was under a moral obligation to pay the $3,015.70, although that obligation could not be enforced at law, and where one pays money in satisfaction of an unenforceable moral obligation like a just debt barred by the statute of limitations, he cannot maintain a suit to recover the money back; because the city's cause of action is for money had and received, which in good conscience, justice, and equity the Bridge Company ought to return, and in good conscience, justice, and equity the Bridge Company may retain the money, and the city ought not to recover it; and because the contracts for the bridges were within the corporate powers of the county, were not against public policy or malum in se, or forbidden under any penalty, the board of commissioners had the authority by proceeding in a manner prescribed by the statute to purchase and secure for the county the bridges it has received and retained without a vote of the electors, the contracts are unenforceable only because the board did not proceed in the manner prescribed by the statute, but in another way; the county has received, accepted, and retains the full benefit of the Bridge Company's complete performance of the contracts—for these reasons the county is not entitled to recover the $3,015.70 it has paid to the Bridge Company in part payment for the bridges, and the judgment below must be modified in accordance with the views expressed in this opinion.