**PROTEST OF KANSAS CITY SOUTHERN RY. CO.**

No. 22626. Opinion Filed April 26, 1932.

Rehearing Denied May 24, 1932.

Joseph R. Brown and James B. McDonough, for protestant.

J. Fred Green, County Attorney, W. S. Moore, Assistant Co. Atty., R. O. Ingle, and W. A. Carlile, for protestee.

ANDREWS, J. The plaintiff in error filed its protest with the Court of Tax Review protesting certain tax levies made in Sequoyah county, Okla., for the fiscal year commencing July 1, 1930. After a hearing that court sustained the protest as to some of the items and overruled it as to others. Both the protestant and the protestee appealed to this court.

On its cross-appeal the defendant in error, hereinafter referred to as the protestee, presents but one proposition, to wit, that the Court of Tax Review erred in holding invalid the judgment in what was therein designated as case No. 675, Mildred Watts v. Board of County Commissioners. The judgment roll in that case consists of a "bill of particulars," with the exhibits thereto, a "waiver of issuance and service of summons, appearance and answer," and a "journal entry of judgment." The "waiver of issuance and service of summons, appearance and answer," with the caption omitted, is as follows:

"Comes now J. A. Taylor, Chairman of the Board of County Commissioners of Sequoyah County, Oklahoma, and waives issuance and service of summons in the above-entitled cause and said board enters its personal appearance herein, and for answer to plaintiff's bill of particulars denies each and every allegation set out and contained therein.

"J. A. Taylor,

"Chairman, Board of County Commissioners of Sequoyah County, Oklahoma."

By that instrument the chairman of the board of county commissioners attempted to waive the issuance and service of summons and to enter an appearance for the board of county commissioners. It contained an answer in the form of a general denial. The journal entry of judgment shows that "* * * the court having heard the evidence and by agreement of the parties hereto, finds the issues in favor of the plaintiff, Mildred Watts, and against the defendant, the board of county commissioners. * * *" There is no legal authority for the chairman of a board of county commissioners to waive the issuance and service of summons for the county, as was attempted to be done in this case, or for the county attorney to agree to a judgment against the county, as was recited in the journal entry in this case. Under the rule stated in Re Protest of Gypsy Oil Company, 141 Okla. 291, 285 Pac. 67, and other decisions of this court, the judgment roll shows the purported judgment to be void. Since the judgment is void, it could not be included in the needs of the county for sinking fund purposes, and there was no error in the Court of Tax Review sustaining the protest thereto.

The plaintiff in error, hereinafter referred to as the protestant, attacks the judgment of the Court of Tax Review on a number of the several items involved. Its contentions are based in part on a decision of this court in Protest of St. L.-S. F. Ry. Co., case No. 21412, opinion filed July 7, 1931. A rehearing has been granted in that cause and the opinion therein is not an authority. [Final decision reported in 157 Okla. 131, 11 P. (2d) 189.]

We think that no good purpose will be served by discussing separately the various items involved herein. We will confine our discussion to legal principles and leave to the Court of Tax Review the application of those principles to the various items protested.

The protestant contends that the several judgments which it had protested, and which protests were denied by the Court of Tax Review, are each illegal and void.

With reference to what is denominated case No. 5441, Gravelle-Hamblin Co. v. Board of County Commissioners, the Court of Tax Review denied the contention of the protestant that the judgment is void, on the theory that the trial court had tried the issues presented and that it had not rendered a judgment by confession. The Court of Tax Review refused to permit the protestant to show that no appropriation had been made which could have been the basis of the claim of the plaintiff in that action, on the theory that that issue was litigated in the trial court and that the trial court had determined that an appropriation for that purpose had been made. The basis of the holding of the Court of Tax Review was that the judgment of the trial court could not be collaterally attacked before the Court of Tax Review. That holding is correct if the trial court had jurisdiction of the person of the county at the time it rendered the judgment and if it had jurisdiction to render the particular judgment rendered. The plaintiff in the case under consideration, in

its petition, alleged a copartnership, a written contract between the copartners and the county commissioners of Sequoyah county to construct a bridge for an agreed price therein stated, the construction of the bridge in accordance with the contract, the payment of a portion of the contract price, and the amount of the balance due. It further alleged:

"That at the time of the execution of said contract there was an estimate made and approved by the county excise board of said county, in the sum of $4,500, to apply on the construction of said bridge and all of the cost over that sum was to be paid out of the funds received by said county from the State Highway Department collected as an excise tax on gasoline. That said estimate of $4,500 for the purpose of applying on the construction of said bridge was made and approved at the time the material was placed on the ground and the work actually begun on said bridge, by the plaintiff, but for some reason unknown to the plaintiff the county excise board met and said item of $4,500 was stricken from the estimate made and approved for the fiscal year beginning July 1, 1926, ending June 30, 1927, all of which was done after all of the material for said bridge was on the ground and the construction was begun and the action of said county excise board was not discovered by the plaintiff until said bridge was completed and accepted."

It further alleged therein that a claim for the balance due was filed and disallowed and

"That the county excise board was without authority to strike item of $4,500, made for the purpose of applying on the payment of said bridge, from the general estimate, after the contract for said bridge had been let, and the actual construction begun."

That petition was filed on June 23, 1927. An examination thereof discloses that the contract relied upon by the plaintiff therein, a copy of which was attached thereto as an exhibit, was dated July 19, 1926, and that the plaintiff in the petition alleged that the contract was entered into on the 19th day of July, 1926. There is no provision of law for the making of an appropriation during a fiscal year prior to the first meeting of the excise board during the fiscal year, which, by the provisions of section 9698, C. O. S. 1921, is on the last Saturday of July. The last Saturday of July, 1926, was after July 19, 1926. As a matter of law, the excise board could not have legally approved an estimate of the county for the fiscal year commencing July 1, 1926, on or prior to July 19, 1926, the date on which the contract was entered into. The "estimate made and approved by the county excise board," referred to in the petition, must have been an estimate made to and approved by the county excise board during a preceding fiscal year, for, as stated, it could not have been for the current fiscal year. The trial court and the Court of Tax Review evidently overlooked that fact. The petition did not state a cause of action.

Under the same date that the petition was filed, the board of county commissioners of Sequoyah county, by J. A. Taylor, chairman, filed an instrument denominated "Appearance and Waiver of Summons," which, with caption, date, and signature omitted, was as follows:

"Comes now the Board of County Commissioners of Sequoyah County, State of Oklahoma, enters its appearance for said county, in this cause, waives service of a summons, and consents that said cause may be heard at once without further notice.

"Said board hereby states to the court that a copy of the petition in the above styled cause, filed by the plaintiff, has been read by said board while it was in session, and that the allegations contained in said petition are true. That Sequoyah county is justly indebted to the plaintiff in the sum of $1,630.45, which is the balance due plaintiff for the construction and completion of a bridge on the county highway between sections 19 and 20, township 11, north, range 25 east, in Sequoyah county, Oklahoma, which sum is past due and unpaid, and for which a claim has been duly filed and disallowed for the lack of funds only."

It will be noted that that instrument recites that a copy of the petition had been read by the board of county commissioners while it was in session, but it nowhere recites that the board of county commissioners of Sequoyah county authorized the chairman of that board or anyone else to waive the issuance and service of summons or to enter an appearance or to file an answer. The journal entry of judgment, rendered on the 7th day of November, 1927, and filed on that date recites that the board of county commissioners of Sequoyah county entered its appearance in the cause in writing, waived service of summons and consented to a trial of the cause without further notice; that the county attorney appeared for the defendant; that both parties announced ready for trial, waived a jury and agreed to submit the cause to the court; that the court heard the evidence and found the existence of a partnership; that the contract was entered

into; the completion of the contract; the payment of a part of the contract price, and the balance due thereon. The court further found:

"That at the time of the execution of said contract there was an estimate made and approved by the county excise board of said county, in the sum of $4,500, to apply on the construction of said bridge and all of the cost over that sum was to be paid out of the funds received by said county from the State Highway Department collected as an excise tax gasoline. That said estimate of $4,500 for the purpose of applying on the construction of said bridge was made and approved at the time the material was placed on the ground and the work actually begun on said bridge, by the plaintiff, but for some reason unknown to the plaintiff the county excise board met and said item of $4,500 was stricken from the estimate made and approved for the fiscal year beginning July 1, 1926, ending June 31, 1927, all of which was done after all of the material for said bridge was on the ground and the construction was begun and the action of said county excise board was not discovered by the plaintiff until said bridge was completed"

—and that the county excise board was without authority to strike the item of $4,500 from the appropriation made for the purpose of applying on the contract for the bridge after the contract had been let and the actual construction of the work begun. The court rendered judgment as prayed for by the plaintiff.

Had the attention of the trial court been called to the provisions of section 9698, supra, with reference to the authority of the county excise board to make appropriations and fix rates of levy for counties, doubtless it would not have held that at the time of the execution of the contract there was an estimate made and approved by the county excise board or that "the county excise board was without authority to strike said item of $4,500 made for the purpose of applying on the payment of said bridge, from the general estimate, after the contract for said bridge had been let, and the actual construction begun." The contract was void for the reason that it was entered into prior to the earliest date on which the county excise board could have made an appropriation for that purpose and, since it was not alleged that the county excise board had made a legal appropriation for the construction of the bridge in question, the petition did not state a cause of action. The trial court did not have

jurisdiction to render the judgment rendered in the action.

The protestant offered to prove that the estimate made by the board of county commissioners was not approved by the excise board and that no appropriation was made by that board for that purpose. There was no error in denying that offer, for the trial court did not have jurisdiction over the person of the defendant. The judgment roll shows no service of summons upon Sequoyah county. It shows that the chairman of the board of county commissioners attempted to enter an appearance for the county in the cause and to confess a judgment against the county. From the judgment roll · we must conclude that the trial court was without jurisdiction of the person of the defendant. The judgment of that court is void upon the face of the judgment roll. See In re Protest of Gypsy Oil Co., supra; Eaton, Co. Treas., v. St. Louis-S. F. Ry. Co., 122 Okla. 143, 251 Pac. 1032; Protest of Chicago, R. I. & P. Ry. Co., 151 Okla. 129, 2 Pac. (2d) 935; Oklahoma City v. McWilliams, 108 Okla. 268, 236 Pac. 417; and Faught v. City of Sapulpa, 145 Okla. 164, 292 Pac. 15.

The merging of an invalid claim into a judgment does not validate the claim, but a judgment of a court of competent jurisdiction, which is shown by the judgment roll to be valid, is valid against a collateral attack, even though the claim sued on in the action was invalid As held in Faught v. City of Sapulpa, supra:

"If a political subdivision of the state is sued in a court of competent jurisdiction having jurisdiction of the subject-matter of the action, and that political subdivision is brought before the court by proper service of summons, or if it files its answer which, by its terms, contests the claim and in no wise confesses the claim or the facts upon which the claim is based, and the court renders a judgment thereon within its jurisdiction, that judgment, unappealed from, is binding and conclusive upon the political subdivision of the state and upon the taxpayers thereof, subject only to the right to have the same vacated, set aside, or held for naught in a proper proceeding. Such a judgment may not be collaterally attacked. It must be given full force and effect by the municipal officers, the excise board, and the courts."

On the contrary, unless the judgment roll shows the judgment to be valid, the judgment is void on its face and may be attacked in any proceeding, either directly or collaterally. Since the judgment of the district

court is void, the excise board was without authority to make an appropriation for sinking fund purposes which included the amount of that judgment or any portion of it.

The judgment of the Court of Tax Review denying the protest as to the judgment in case No. 5441, Gravelle-Hamblin Co. v. Board of County Commissioners, is erroneous and it is reversed.

The other judgments involved herein are attacked as being illegal and void on two grounds:

"First: Because said judgments were rendered on claims against the county, or subdivision, which said claims were illegal because of no funds.

"Second: Because said judgment rolls do not contain the averments that the claim, or claims, upon which the case is predicated were incurred within the appropriation, and when funds were available to pay them."

Section 26, article 10, of the Constitution imposes two limitations upon the power of the political subdivisions therein named to become indebted. They are, first, that no political subdivision therein named shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for that year, without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose; and second, in cases requiring such assent, no indebtedness shall be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness. It was intended by the makers of the Constitution that those provisions of the Constitution should be applied by the courts. In the language used in Eaton v. St. L.-S. F. Ry. Co., supra, it "constitutes a stop line which cannot be legally crossed" and "The meaning of these plain words cannot be obscured by any process of theorizing." As stated in that case, they are not only limitations upon the political subdivisions, but upon the Legislature, the people, and the courts. Where it is sought to recover a judgment against a municipality on a claim ex contractu, those constitutional limitations stand as a bar to the recovery of a judgment thereon until it is pleaded and admitted or proved that the indebtedness sued on was not contracted in violation of those provisions. As stated by this court in Faught v. City of Sapulpa, supra:

"When a court is called upon to render a judgment against a political subdivision of the state, the first question presented is why, if the claim is valid, was it not paid from the income and revenue provided for that purpose. In order to state a cause of action, the petition must allege that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people. A general denial on the part of the municipality puts in issue those allegations and presents an issue to be tried, but an instrument denominated 'answer' which asserts that the indebtedness sued on is valid and is unpaid for the reason that there are no funds with which to pay it does not put in issue those allegations."

In such an action there is presented to the court for its determination certain questions of fact. Among those are, Did the indebtedness, with the other indebtedness of the political subdivision of the state, exceed, in the year in which it was incurred, the income and revenue provided for that year? If the court has jurisdiction of the subject-matter of the action and of the parties, it has jurisdiction to determine that question, and its determination thereof, whether rightfully or erroneously done, cannot be attacked in a collateral proceeding where the judgment roll shows the judgment to be valid. An entirely different situation is presented where an attempt has been made to use a court as means of validating a claim that is invalid under those constitutional provisions. Where that has been done, this court will scrutinize the judgment roll to determine whether or not the trial court had jurisdiction of the subject-matter of the action, jurisdiction to render the particular judgment rendered, and jurisdiction of the person of the political subdivision at the time of the rendition of the judgment. If the judgment roll shows an absence of any one of those jurisdictional requirements, this court will hold that the judgment is void upon the face of the judgment roll.

In Eaton v. St. L.-S. F. Ry. Co., supra, the second limitation hereinabove referred to was in issue. The first limitation hereinabove referred to was not in issue in that case. In that case it was contended that the decision of this court in Smartt, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 Pac. 1101, recognized an exception to the limitations of section 26, article 10, of the Constitution. This court called attention to the fact that

the issue in the Smartt Case was the first limitation hereinabove defined and not the second limitation hereinabove defined. The decision in the Eaton Case was confined to the second limitation hereinabove defined. That fact should be kept in mind in determining what was held in that case. In the instant case the first limitation hereinabove defined is in issue and the second limitation hereinabove defined is not in issue.

The protestee contends that a claim for an amount paid out in procuring a tax deed, together with interest on the amount paid at six per cent. per annum from the date of payment under the provisions of chapter 30, Session Laws 1925, is not a claim founded upon a contract and that the provisions of section 26, article 10, of the Constitution are not applicable thereto. The limitations contained in section 26, article 10, supra, are not only against the county, but against the Legislature, and the Legislature is as much without authority to enact a statute imposing a liability on the county in violation of the provisions of section 26, article 10, supra, as the county has to assume an obligation in violation of the provision of that section. We do not want to be understood as holding that chapter 30, Session Laws 1925, is unconstitutional and void. We merely hold that it is operative only where the operation thereof does not conflict with the provisions of section 26, article 10, supra. In the case at bar the claim of the plaintiff in the action was void for the reason that it was in violation of the provisions of that section. There was no error on the part of the Court of Tax Review in sustaining the protest of the protestant as to that item.

The protestee contends that under the rule announced in the "Smartt" Case, indebtedness incurred by the county for      ,

"1.  Feeding prisoners

"2.  Mileage

"3.  Out of county expense

"4.  Sheriff's expense

"5.  Supplies for jail

"6.  Natural gas for heating courthouse

"7.  Election expenses"

—is indebtedness incurred by law and not by contract and that it is not in violation of the provisions of section 26, article 10, of the Constitution. The protestant herein contends to the contrary and in support of its contention it cites the decisions of this court in Board of County Commissioners v.

Gillett, 9 Okla. 593, 60 Pac. 277; Campbell v. State ex rel. Brett, 23 Okla. 109, 99 Pac. 778; Kerr, Co. Clerk, v. State ex rel. Wimbish, 33 Okla. 110, 124 Pac. 284; State ex rel. Decker v. Stanfield, 34 Okla. 524, 126 Pac. 239, and Lake County v. Rollins, 130 U. S. 662, 32 L. Ed. 1060. The Court of Tax Review denied the protest as to the seven classes of indebtedness hereinabove listed. Whether or not there was error in that holding is dependent upon two questions: First, what is the rule stated in the "Smartt" Case? and second, is that rule to be followed?

In Faught v. City of Sapulpa, supra, this court, with reference to the rule stated in the "Smartt" Case, said:

"That doctrine has been approved in one case (Hume v. Wyand, 68 Okla. 261, 173 Pac. 813), and has been followed in one case (Anderson v. Board of Commissioners, 134 Okla. 299, 273 Pac. 222), but it has been criticised by this court in many decisions and the doctrine has never been extended."

We now repeat that the exception noted in those decisions will be recognized and that it will not be extended.

The constitutional limitation hereinabove referred to as the "first" must be construed, as it was in the "Smartt" Case, with other constitutional provisions. This limitation, by its language, implies that income and revenue will be provided for each political subdivision therein named for each year. The maximum rate of levy of ad valorem taxation for a county is "not more than eight mills," with a provision for an additional levy for a county high school and for aid to the common schools of the county, not exceeding two mills. Section 9, article 10, of the Constitution. The Legislature, under uniform decisions of this court, is authorized to reduce that maximum rate of taxation on an ad valorem basis, and it has done so by the provisions of section 9692, C. O. S. 1921, as amended by chapter 61, Session Laws 1923-24. However, this court has never held that the Legislature may reduce the rate of ad valorem taxation authorized by the Constitution to a rate of ad valorem taxation which is insufficient to produce revenue which, with the income and other revenues of the political subdivision, is sufficient to permit the performance of the constitutionally required governmental functions. The effect of the holding in the "Smartt" Case is that that cannot be done. An examination of the "Smartt" Case discloses nothing to indicate that the claims therein approved by this

court, with the other valid indebtedness of the county for the same year, exceeded the constitutional limitation as to the rate of ad valorem taxation. Had that fact existed in that case, the court doubtless would have held that the claims were void as in violation of the provisions of section 9, article 10, of the Constitution. There is nothing in the "Smartt" Case from which it can be said that this court intended to hold or that it held that the maximum rate of ad valorem taxation provided by section 9, article 10, of the Constitution might be exceeded for any purpose. The provisions of that section limit the rate of ad valorem taxation for counties, and that limitation may not be exceeded in any manner or for any purpose by any county. If an office is created, if an officer is authorized for the office, and if the officer's duties are prescribed, either in terms or by implication, by the Constitution, it is the duty of the Legislature to provide for a rate of ad valorem taxation, not exceeding the maximum provided by section 9, article 10, of the Constitution, which, with the income and other revenue provided, is sufficient for the performance of the constitutional functions of government, and it may not, by reducing the constitutional rate of ad valorem taxation, interfere with the performance of constitutionally required governmental functions. The reason is obvious. If the Legislature can do that, it can prevent the recovery of compensation for the performance of constitutional governmental functions, except by way of a judgment against the political subdivisions. In other words, the Legislature may not deprive a county of the revenue sufficient to compensate its constitutional officers for the performance of their constitutional duties, if those officers can be compensated within the limitation as to the rate of ad valorem taxation provided by section 9, article 10, of the Constitution.

As stated in the "Smartt" Case, the Legislature may not establish a system which will "* * * depend upon the whim and caprice of certain local officials who might, by failing and refusing to make proper provision therefor, render it impossible to secure an enforcement of such laws by the officers charged with the duty of so doing."

So much of the ad valorem tax rate authorized by the Legislature as is necessary for the performance of constitutional governmental functions must be appropriated and used for those purposes, and if the funds produced by the legislative rate of ad valorem taxation, with the income and revenue from other sources, is not sufficient for those purposes, a rate of ad valorem taxation must be levied which, with the income and revenue from other sources, will be sufficient for the performance of constitutional governmental functions, not exceeding the maximum rate of ad valorem taxation provided by section 9, article 10, of the Constitution. Until an appropriation has been made for the performance of constitutional governmental functions, no appropriation may be made for the performance of legislative governmental functions or for other expenditures of public funds. As stated in the Eaton Case,

"* * * to hold that the limit of indebtedness may be reached for luxuries or conveniences, nonessentials, 'voluntary indebtedness,' and then pile all of the necessary expenses of government, 'compulsory indebtedness,' on top of the limit, is to destroy the effect of section 26, art. 10, and thereby obliterate the one safeguard with which the people, in their adoption of the Constitution, have surrounded themselves against reckless expenditures and exorbitant taxation."

We must conclude that the income and revenue of a county, including revenue derived from the maximum legislative limitation upon the rate of ad valorem taxation, must be appropriated and used for the defrayment of the cost of the constitutional governmental functions of the county in so far as it is necessary for that purpose, and that until an appropriation has been made for that purpose, no appropriation can be made for legislative governmental functions or for other expenditures of public funds, and that if the rate of ad valorem taxation authorized by the Legislature is insufficient to produce sufficient funds to enable counties to perform their constitutional governmental functions, a levy of ad valorem taxation sufficient therefor and not exceeding the constitutional limitation on the rate of ad valorem taxation may be made. The distinction between legislative and constitutional governmental functions is shown by the decision of this court in Board of Commissioners of Creek County v. Robinson, 140 Okla. 142, 282 Pac. 299, wherein a claim was for the services of the superintendent of public health of Creek county, who derived his authority by appointment from the State Health Officer. No appropriation was made for his compensation. Therein this court said:

"Assuming, for the purposes of this case, that the rule announced in the Smartt Case is the established law, still we are of the opinion that the governing statute, that is,

the statute which provides for compensation of the county superintendent of public health, is not such a statute as comes within the purview of the case of Smartt, Sheriff, v. Board of County Commissioners, supra.; and that whatever indebtedness may be created pursuant to this statute is not a compulsory indebtedness, but strictly a voluntary indebtedness."

It is not only the duty of the taxing officials to make the appropriations in the order herein stated, but they may be required by mandamus to do so. City of Guthrie v. Excise Board of Logan County, 86 Okla. 24, 206 Pac. 517.

Two questions are thus presented: First, where no appropriation has been made for the performance of constitutional governmental functions; and second, where an appropriation has been made for those purposes and by reason of some unforeseen condition the appropriation made therefor is insufficient. The "Smartt" Case involved claims in excess of the appropriations made for those purposes. The opinion recited that payment of the claims had been refused "* * * on the ground that the revenue provided for such purposes for the fiscal year, during which said claim arose, had been exhausted prior to the accrual or presentation thereof."

In answer to the first question, we are of the opinion that it is not only the duty of the county taxing officials to make appropriations for the performance of constitutional governmental functions, but that it is the duty of the officers charged with the performance of those functions to see that such appropriations are made. The constitutional officers charged with the performance of constitutional governmental functions may not sit idly by and see the entire income and revenue of a county appropriated for other purposes and then recover compensation for the performance of their duties. They are charged with knowledge of the fact that appropriations must be made, and if they fail to have appropriations made for the conduct of their offices, they are responsible for the condition in which they find themselves and they will not be permitted to recover a judgment against the county when no appropriation was made for the conduct of their offices. A materially different situation exists where a county officer, in good faith, requests an appropriation to be made and where the county taxing officials, in good faith, make an appropriation for the conduct of his office and by reason of unforeseen conditions the appropriation so made is insufficient. In that event it is his duty to apply to the county taxing officials for a supplemental appropriation for the conduct of his office, and a supplemental appropriation therefor should be made, although to make it requires the transfer of funds from unexpended appropriations theretofore made for other purposes. In the event that no such supplemental appropriation may be made, then and then only does the rule stated in the "Smartt" Case apply, and that rule is limited by the provisions of section 9, article 10, of the Constitution as to the maximum rate of ad valorem taxation.

In the case at bar the office of sheriff was created by the provisions of section 2, article 17, of the Constitution. While the Legislature is authorized to change the provisions of that section, it has not done so. The sheriff's salary is fixed by legislative enactment and not by the provisions of the Constitution. His mileage and his expenses are fixed by legislative enactment. Those items are not within the rule herein stated and, as to those items, he may recover only where there is a valid appropriation sufficient to cover the amount thereof. The feeding of prisoners in the county jail and the supplies necessary for the maintenance of the county jail are within the rule herein stated. Natural gas for heating the court house is not within this rule, except so far as it is necessary for the heating of the jail. A telephone is a luxury rather than a necessity in a county jail. A claim therefor is not within the rule herein stated.

As to election expenses, a claim is dependent upon the kind of election at which the services were rendered. If it is an election required to be held by the Constitution, such a claim is within the rule herein stated. If it is for an election authorized by the Constitution and not required thereby, it is not within the rule herein stated. The expenses for the conducting of an election not required by the Constitution are not valid unless an appropriation in a sufficient amount has been made therefor. As to elections required by the Constitution to be held, the taxing officials are charged with knowledge that such elections are to be held and an appropriation for the expense thereof should be made. It is the duty of the members of the county election board to see that an appropriation therefor is made. We know of but one exception and that is an initiative or referendum election, which, under the Constitution, is required to be held and of which no advance information might be had.

The trouble in the instant case arose by reason of the failure of the taxing officials

of the county to provide funds for the performance of constitutional governmental functions before providing for other expenditures of public funds.

We have not analyzed the 15 judgment rolls filed herein, for the reason that they are not analyzed in the briefs. We are leaving to the Court of Tax Review the responsibility of applying the rules herein stated to those several judgments.

The cause is remanded to the Court of Tax Review, with directions to render judgment in conformity with the rules herein expressed.

HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., and KORNEGAY, J., dissent. CLARK, V. C. J., and RILEY, J., absent.

Note.—See under (8), 7 R. C. L. 937, 951; R. C. L. Perm. Supp. p. 2106. (18), 18 R. C. L. 281, R. C. L. Perm. Supp. p. 4429; R. C. L. Pocket Part, title Mandamus, § 208.