2010 OK 55

**CITY OF STILLWATER, Oklahoma, a Municipal Corporation, Plaintiff/Appellant,**

v.

**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 2095, Defendant/Appellee.**

No. 107,477.

Supreme Court of Oklahoma.

July 6, 2010.

Rehearing Denied Sept. 13, 2010.

John E. Dorman, City Attorney, Chanda R. Graham, Assistant City Attorney, Stillwater, OK, for plaintiff/appellant.

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, OK, for defendant/appellee.

WINCHESTER, J.

¶ 1 The essential issue before this Court is whether a contractual term regarding an increase in salary in the second year of a two-year collective bargaining agreement between the City of Stillwater and the Union representing the City's firefighters is void because it violates Article 10, § 26, of the Oklahoma Constitution. We hold that the contractual term increasing the salary of the firefighters in the second year violates the constitution of this state.

## I. FACTS AND PROCEDURE

¶ 2 The City of Stillwater, the appellant, and the International Association of Fire Fighters, Local 2095, the appellee, brought to arbitration a dispute over a collective bargaining agreement dated July 26, 2007. After the arbitrators heard the matter, the Opinion and Award of the Board, granted December 10, 2008, found the firefighters were entitled to a 6.1% wage increase. The City petitioned the District Court of Payne County to vacate the arbitration decision and both parties moved for summary judgment. The court granted the motion of the Union and denied the motion of the City.

¶ 3 The district court made findings of fact in its order dated July 29, 2009. Those facts include the following. The collective bargaining agreement covered two fiscal years, from July 1, 2007 through June 30, 2009. It contained a formula for fixing a salary scale

based on the average salary paid to firefighters by certain named cities located in Oklahoma. In the first year, the firefighter's compensation was fixed and paid according to the formula. The agreement provided for a new survey of the cities in January 2008, the second year of the contract, and that the agreement be reopened in 2008 "for the sole purpose of this wage adjustment". If the City failed to appropriate funds by June 30, 2008, for the fiscal year 2008–2009, the City and Union were to immediately enter into good faith bargaining for the 2008–2009 contract year on monetary issues only.

¶ 4 Under the formula found in the agreement, the January 2008 wage survey indicated an average wage increase of 6.1%. However, the City appropriated funds for a 3% raise for the fiscal year. The Union declined that raise, but countered with an offer to accept a 6.1% raise. After the City declined the Union's offer, the matter was submitted to arbitration. The arbitration board awarded the Union the 6.1 % raise, the City appealed and this Court granted the City's motion to retain the cause.

## II. COLLECTIVE BARGAINING AGREEMENT

¶ 5 In the City's Petition to Vacate Arbitration Decision the City asserts the arbitration board rendered a decision that does not draw its essence from the collective bargaining agreement, exceeds the board's authority and violates public policy. More specifically,

the City argues that the decision (1) is based on general considerations of fairness and equity rather than the express terms of the agreement; (2) does not give effect to the express terms of the agreement; (3) imposes legislative requirements on the City that are not expressly provided in the agreement; and (5) commands a result that violates Oklahoma's constitution. The City relies on *Wyatt–Doyle & Butler Engineers v. City of Eufaula*, 2000 OK 74, 13 P.3d 474. That case held that a municipality cannot create an obligation one year that results in a debt in a succeeding year without violating Article 10, § 26 of Oklahoma's constitution. *Wyatt–Doyle & Butler Engineers*, 2000 OK 74, ¶ 14, 13 P.3d at 479.

¶ 6 The Union answered in a motion to dismiss. It asserted that the dispute taken before the arbitration board was interest arbitration and not grievance arbitration. "Grievance" arbitration involves interpreting a collective bargaining agreement and subsequently resolving a dispute between the public employer and the public employee. "Interest" arbitration involves the resolution of an impasse in collective bargaining over the terms of a new contract. *City of Bethany v. Public Employees Relations Board*, 1995 OK 99, ¶ 1, n. 3, 904 P.2d 604, 607, n. 3.

¶ 7 The Union argued that when the City rejected the second year of the two-year agreement, the rejection reopened the monetary issues. As authority, the Union cites 11 O.S.Supp.2009, § 51–108.[1] The title page of

---

1. 2004 O.S.Laws, ch. 126, § 1, Article LI–FIRE AND POLICE ARBITRATION, § 51–108. Hearing–Opinions:

"A. 1. The arbitration board acting through its chair shall call a hearing to be held within ten (10) days after the date of the appointment of the chair and shall, acting through its chair, give at least seven (7) days' notice in writing to each of the other two arbitrators, the bargaining agent and the corporate authorities of the time and place of such hearing.
"2. At least seven (7) days before the date of the hearing the corporate authorities and the bargaining agent shall submit to each other and to the arbitration board members a written arbitration statement listing all contract terms which the parties have resolved and all contract issues which are unresolved. Each arbitration statement shall also include a final offer on each unresolved issue. The terms and offers contained in the arbitration statements shall be known collectively as each party's last best offer.
"3. The hearing shall be informal and the rules of evidence prevailing in judicial proceedings shall not be binding. Any and all documentary evidence and other data deemed relevant by the arbitrators may be received in evidence. The arbitrators shall have the power to administer oaths and to require by subpoena the attendance and testimony of witnesses, the production of books, records, and other evidence relative or pertinent to the issues presented to them for determination. A hearing shall be concluded within twenty (20) days from the time of commencement.
"4. Within seven (7) days after the conclusion of the hearing, a majority of the arbitration board members shall select one of the two last best offers as the contract of the parties. The criteria to be used by the board in determining which offer to select shall be limited to para-

the Opinion and Award of Board of Arbitration states "Interest Arbitration–Wages" and states the years as 2008–2009. Page two of the opinion in the General Background states: "The parties have negotiated a wage reopener for the second year of their two-year contract. It is the wage reopener that results in this dispute." The issue as articulated by the board of arbitration is "Whether IAFF Local 2095 employees are legally entitled to a 6.1% across the board pay raise, effective July 1, 2008, by virtue of their CBA with the City". The board of arbitration stated that the parties had each stipulated its "last best offer", 3% for the City and 6.1% for the Union.[2] The board addressed the constitutional argument that an obligation had been created in one year which would be paid in the next year, and rejected City's assertion that the obligation had been created in a previous year.

¶ 8 However, the board concluded in making its award that the Union is "legally entitled to a 6.1% wage adjustment as negotiated by the parties pursuant to contract." In a dissenting opinion, one of the members of the board observed that the parties made a two-year agreement, and that to make the agreement legal the parties inserted language recognizing that any wage increases in year two of the agreement would be awarded only if funds were appropriated by the City Council. He continued in his dissent that the parties had a lengthy history of collective bargaining and the Union knew or should have known of the limitations on the city's funding abilities. Article 14, § 1 entitled "Wages/Hours" in the collective bargaining agreement included the sentence "Salary movement is subject to the appropriation of funds by the City Commission." The majority of the board of arbitration construed that language to reach a result favorable to the Union.

### III. DISCUSSION

¶ 9 The board and the Union characterize this dispute as interest arbitration, but the board's opinion constantly referred to and construed the previous year's agreement between the City and the Union. The board used the formula provided in the previous year's agreement to set the salary of the firefighters and to bind the City to honor

---

graphs 1 through 5 of Section 51–109 of this title. The arbitration board may not modify, add to or delete from the last best offer of either party. Written notice of the selection decision shall be mailed or delivered to the bargaining agent and the corporate authorities.

"B. If the city's last best offer is not selected by the arbitration board, that party may submit the offers which the parties submitted to the arbitration board to the voters of the municipality for their selection by requesting a special election for that purpose. The request for an election must be filed with the clerk of the municipality within ten (10) days of the date of the written decision of the arbitration board. Written notice of the filing of the request shall be given to the bargaining agent. If a request for an election is not filed in a timely manner, the board's selection decision shall be final, and the last best offer it selected shall constitute the agreement of the parties.

"C. Upon receiving a request for an election pursuant to the provisions of this section, the clerk shall notify the mayor and governing body of the request. Within ten (10) days of such notification the municipal authorities shall call for a special election. The election shall be governed by the state laws on special municipal elections. Only residents of the municipality shall be eligible to vote in said election. The ballot shall inform the voters that they must choose either the last best offer of the bargaining agent or the last best offer of the corporate authorities. Within twenty (20) days of the date of the decision to call for the election, the municipal authorities and the bargaining agent shall agree on a ballot. If no agreement is reached within that time, each party shall present a proposed ballot to the arbitration board. The parties shall present their ballot to the board no later than seven (7) days after the aforementioned twenty-day period. The board shall consider the proposed ballots and shall select one or the other within seven (7) days of the date of receipt of the parties' proposed ballots. The last best offer receiving a majority of the votes shall become the agreement of the parties.

"D. Concerning issues relating to money, such ballot shall clearly state the total dollar amount of the offer from the corporate authority and the total dollar amount of the offer from the bargaining agent. Such ballot shall also disclose the percentage of increase or decrease both offers have over or under the last contract of the two parties.

"E. Agreements which are reached as a result of selection by the arbitration board or by election shall be effective on the first day of the fiscal year involved regardless of the date of the final selection."

**2.** Opinion and Award of Board of Arbitration, 8.

that agreement. Even though the agreement did not set the actual amount of their salaries in the previous year, the obligation is created in the previous year.

¶ 10 The method the City attempted to use to keep the contract from violating Oklahoma's constitution was to insert the wording that the salary increase would be "subject to the appropriation of funds by the City Commission" but when the City Commission agreed to an increase of only 3%, the board determined that the disputed language was a "mere recognition that the funds are to be appropriated by the City Commission once the deal [was] made, a condition subsequent." [3] The board construed the contract, explained its construction and made a determination in favor of the Union based on the two-year contract. This it is forbidden to do.

¶ 11 Article 10, § 26 of the Oklahoma Constitution provides in pertinent part:

> "Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof...."

¶ 12 The Union, in their claim that the issue before the board of arbitration was merely interest arbitration, urges that such arbitration is permitted pursuant to 11 O.S.Supp. 2009, § 51–108, and therefore does not violate the constitution. This Court has held that this statute does not, on its face, violate Article 10, § 26 of the Oklahoma Constitution, but that statute could be unconstitutional as applied. *Fraternal Order of Police v. City of Choctaw*, 1996 OK 78, ¶ 26, 933 P.2d 261, 268. When the board of arbitration construes a previous year's agreement to explain its decision in favor of the Union, that explanation reveals that the parties' appearance before the board involved grievance arbitration, not interest arbitration. We reject the Union's characterization of the arbitration as interest arbitration.

¶ 13 Our previous cases are consistent that a previous year's agreement cannot be used to set subsequent year's salaries of municipal employees because the municipality cannot create an obligation one year that results in a debt in a succeeding year. *Wyatt–Doyle & Butler Engineers*, 2000 OK 74 ¶ 14, 13 P.3d at 479. Our state constitution forbids the City of Stillwater from becoming indebted "in any manner" when that debt is created in a previous year. Using a formula agreed to in a previous year to obligate the city to a pay scale the succeeding year is prohibited. The city through such an agreement cannot be obligated to make such a payment established by a previous-year's formula because it would constitute a charge against municipal funds beyond the fiscal year covered by the expired agreement. *See, City of Tulsa v. Public Employees Relations Bd.*, 1990 OK 114, ¶ 1, 845 P.2d 872, 873. The purpose behind the constitutional provision is to force cities and municipalities to operate on a cash basis, and to prevent indebtedness payable out of tax revenues from extending beyond one year. *City of Del City v. FOP, Lodge No. 114*, 1993 OK 169 ¶ 5, 869 P.2d 309, 311.

¶ 14 In the *City of Tulsa* one question answered by the Court was whether a municipality was obligated to continue paying its employees under a wage provision in an expired collective bargaining agreement until a new agreement is reached, and the Court answered that the city was not obligated. *City of Tulsa*, 1990 OK 114, ¶ 1, 845 P.2d 872, 873. The board of arbitration and the district court had imposed this rule on the City of Tulsa through a legal concept known as the "dynamic status quo", which would prohibit unilateral changes made by an employer during negotiations for a new collective bargaining agreement. *City of Tulsa*, 1990 OK 114, ¶ 16, 845 P.2d 872, 876–877. The Court held that a city's contract is not valid if it constitutes a charge against municipal funds beyond the fiscal year. *City of Tulsa*, 1990 OK 114, ¶ 22, 845 P.2d 872, 878.

¶ 15 In a similar case, the *City of Del City*, the Court addressed a legislative attempt to accomplish the same result as the judicially

---

3. Opinion and Award of Board of Arbitration, 8.

created dynamic status quo. The issue in that case was the constitutionality of the "Evergreen" clause as it appeared in the Oklahoma Fire and Police Arbitration Act, 11 O.S.1991, § 51–105. The terms of that statute would have continued an existing collective bargaining agreement with a city beyond its stated date of expiration, and into the future "until a new agreement [was] reached". *City of Del City*, 1993 OK 169 ¶ 1, 869 P.2d 309, 310. The Court held that the Evergreen Clause violated the Oklahoma Constitution and referenced the previous *City of Tulsa* holding. *City of Del City*, 1993 OK 169 ¶¶ 6, 37, 869 P.2d 309, 311, 318. Citing *In Protest of Kansas City So. Ry. Co.*, 1932 OK 328, 11 P.2d 500, the Court observed that the limitations are binding not only on the municipality, but also on the legislature. *City of Del City*, 1993 OK 169 ¶ 20, 869 P.2d 309, 314.

■ ¶ 16 As in *Wyatt–Doyle & Butler*, the Uniform Arbitration Act,[4] 12 O.S.Supp.2009, §§ 1851–1881, does not prohibit review of the issue by this Court. *Wyatt–Doyle & Butler*, 2000 OK 74, ¶ 1, 13 P.3d 474, 475. The order of the District Court is reversed. The cause is remanded with instructions to enter judgment for the City of Stillwater in a manner consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

CONCUR: EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, WATT, WINCHESTER, REIF, JJ.

CONCURS IN RESULT: COLBERT, J.

NOT VOTING: KAUGER, J.

4. Previously codified at 15 O.S.2001, §§ 801–    818,