2015 OK CIV APP 72

**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, Local 2284, Plaintiff/Appellant,**

v.

**PUBLIC EMPLOYEES RELATIONS BOARD, an Oklahoma agency; and City of McAlester, an Oklahoma Municipality, Defendants/Appellees.**

**No. 111,520.**

Court of Civil Appeals of Oklahoma, Division No. 4.

March 6, 2015.

Rehearing Denied April 13, 2015.

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma, for Plaintiff/Appellant.

Charles S. Plumb, Jared M. Burden, McAfee & Taft, a Professional Corporation, Tulsa, Oklahoma, for Defendant/Appellee City of McAlester.

DEBORAH B. BARNES, Judge.

¶1 This appeal arises from failed negotiations for a new collective bargaining agreement between a municipality and a firefighters union. Plaintiff/Appellant International Association of Fire Fighters, Local 2284, (IAFF) appeals from the trial court's "Journal Entry" (Judgment) reversing in part and affirming in part an order of the Public Employees Relations Board (PERB). Based on our review, we affirm the trial court's Judgment.

## BACKGROUND

¶ 2 The parties agree the fiscal year of Defendant/Appellee City of McAlester (City) begins on July 1, and ends on June 30, of each year, and that a collective bargaining agreement (CBA) was in effect between City and IAFF for fiscal year 2009–10. The 2009–10 CBA contains the following language: "The terms of this Agreement shall not exceed one (1) year, provided this Agreement shall continue from year-to-year and be automatically extended for one-year terms unless written notice of request for negotiations is given by either party at least thirty (30) days before the anniversary date of this Agreement." The parties agree IAFF timely notified City of its intention to negotiate a new contract for fiscal year 2010–11, and that the 2009–10 CBA was, therefore, not "automatically extended" under this language.

¶ 3 IAFF asserts, however, that although the 2009–10 CBA was not automatically extended pursuant to the above-quoted language, because the 2009–10 CBA also provides that "[s]hould a new agreement be in stages of current negotiations, the existing agreement shall be automatically in effect," and because the parties attempted to negotiate a new contract during the 2010–11 fiscal year, that the 2009–10 CBA was, therefore, "automatically in effect" pursuant to this additional language contained in the 2009–10 CBA.

¶ 4 Indeed, among other actions related to negotiating for a new CBA undertaken during the 2010–11 fiscal year, City proposed rolling over the 2009–10 CBA subject to approval by IAFF and the McAlester City Council. IAFF members held a vote and approved the proposed rollover. However, the City Manager of McAlester presented the proposal to the City Council in an executive session for consideration, and when the City Council reconvened into regular session, no member of the City Council moved to approve the proposal, and the City Council adjourned. The parties did not reach an agreement during the 2010–11 fiscal year, and after the expiration of the 2010–11 fiscal

year, in August, 2011, IAFF sought to arbitrate a 2010–11 CBA, and City refused to participate.

¶ 5 IAFF asserted below that City committed an unfair labor practice by refusing to participate in the attempted arbitration for a 2010–11 CBA after the expiration of the 2010–11 fiscal year. IAFF has also asserted City committed an unfair labor practice by making various unilateral changes during the 2010–11 fiscal year (the "five grievances"),[1] in violation of the terms of the 2009–10 CBA which, IAFF asserts, was automatically in effect during the 2010–11 fiscal year pursuant to the language, quoted above, contained in the 2009–10 CBA. Finally, IAFF asserted City committed an unfair labor practice by engaging in "surface bargaining" by proposing a rollover of the 2009–10 CBA for the 2010–11 fiscal year, and by subsequently failing to bring the proposal to an official vote in a regular session by the City Council.

¶ 6 In its order, the PERB found City engaged in an unfair labor practice by (1) refusing to engage in grievance arbitration to resolve the five grievances asserted by IAFF. However, the PERB found IAFF failed to meet its burden of proof as to its allegations that City committed unfair labor practices by (2) engaging in bad faith "surface bargaining," and by (3) refusing to participate in a second interest arbitration proceeding for a new CBA for a previous fiscal year that had already expired.

¶ 7 IAFF appealed the PERB's order to the district court which reversed the PERB's finding as to the five grievances, and affirmed the remainder of the PERB's order. In effect, the district court found in favor of City, and against IAFF, on all issues. IAFF now appeals to this Court.

## STANDARD OF REVIEW

¶ 8 In that the correctness of an administrative agency order is before us, the Oklahoma Administrative Procedures Act (APA), 75 O.S. 2011 §§ 250–323, governs our review. *See City of Tulsa v. State ex rel. Pub. Em-*

---

1. The alleged grievances all arise from events arising after the expiration of the 2009–10 CBA and include refusal to pay incentive increases, removal of holidays, and reduction of sick and annual leave.

*ployees Relations Bd.,* 1998 OK 92, ¶ 12, 967 P.2d 1214. Under the APA, the district court and this Court apply the same review standard for agency actions; except in certain cases of alleged irregularities in procedure before the agency—a situation not applicable here—the review is confined to the record made before the administrative tribunal. *City of Tulsa,* ¶ 12; 75 O.S. 2011 §§ 321–322. An administrative agency's decision must be affirmed if it is found to be a valid order and the administrative proceedings are free from prejudicial error to the appealing party. *City of Tulsa,* ¶ 12; § 322. However, this Court

> may set aside or modify the order [of the administrative agency], or reverse it and remand it to the agency for further proceedings, if [this Court] determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
>
> (f) arbitrary or capricious; or
>
> (g) because findings of fact, upon issues essential to the decision were not made although requested.

75 O.S. 2011 § 322(1) (footnote omitted).

## ANALYSIS

¶ 9 Article 10, § 26(a) of the Oklahoma Constitution provides, in pertinent part, as follows:

> Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof. . . .

¶ 10 The Oklahoma Supreme Court has explained that, pursuant to this language, a municipality cannot create an obligation that results in a debt beyond the current fiscal year. *City of Stillwater v. Int'l Ass'n of Fire Fighters,* 2010 OK 55, ¶ 13, 238 P.3d 926.

> Our state constitution forbids [a city] from becoming indebted "in any manner" when that debt is created in a previous year. . . . The purpose behind the constitutional provision is to force cities and municipalities to operate on a cash basis, and to prevent indebtedness payable out of tax revenues from extending beyond one year.

*Id.* (citations omitted).

¶ 11 Accordingly, the Oklahoma Supreme Court has concluded that a city is not obligated to continue paying its employees under a wage provision in an *expired* CBA "until a new agreement is reached" as "such payments would constitute a charge against municipal funds beyond the fiscal year covered by the expired agreement." *City of Tulsa,* 1990 OK 114, ¶ 1, 845 P.2d 872 (citation omitted). In explaining the conclusion reached in *City of Tulsa,* the Oklahoma Supreme Court, in *City of Stillwater,* stated as follows:

> The board of arbitration and the district court had imposed this rule [i.e., requiring the city to continue paying its employees under an expired CBA until a new agreement is reached] . . . through a legal concept known as the "dynamic status quo," which would *prohibit unilateral changes made by an employer during negotiations* for a new [CBA]. The [*City of Tulsa*] Court held that a city's contract is not valid if it constitutes a charge against municipal funds beyond the fiscal year.

*City of Stillwater,* 2010 OK 55, ¶ 14, 238 P.3d 926 (emphasis added) (citations omitted).

¶ 12 In *City of Del City v. Fraternal Order of Police, Lodge No. 114*, 1993 OK 169, 869 P.2d 309, the Oklahoma Supreme Court addressed the constitutionality of statutory language that, "by its terms would continue an existing [CBA] with a city beyond its stated date of expiration, and into the future 'until a new agreement is reached.' " *Id.* ¶ 1. The *Del City* Court concluded that this statutory language violated article 10, § 26(a) of the Oklahoma Constitution, which, of course, is "binding not only on the municipality, but also on the legislature." *City of Stillwater*, ¶ 15 (citation omitted).

¶ 13 Accordingly, we reject IAFF's assertion that the 2009–10 CBA was in effect after its expiration based on the language in the 2009–10 CBA providing that "[s]hould a new agreement be in stages of current negotiations, the existing agreement shall be automatically in effect." The "five grievances" all arise from unilateral changes made by City during negotiations in the 2010–11 fiscal year, and after the expiration of the 2009–10 CBA. The grievances are all based on violations of a *non-existent* CBA. Consequently, we conclude the trial court did not err in reversing the PERB's finding that City engaged in an unfair labor practice by refusing to engage in grievance arbitration to resolve the five grievances asserted by IAFF.

¶ 14 We further conclude the trial court did not err in affirming the PERB's finding that IAFF did not commit an unfair labor practice by refusing to participate, during fiscal year 2011–12, in an arbitration proceeding for a new CBA for the previous fiscal year (2010–11) that had already expired. Such a retroactive CBA—a CBA for a fiscal year that had already elapsed—would also violate article 10, § 26(a) of the Oklahoma Constitution, which prevents municipalities from charging against municipal funds beyond the current fiscal year. That is, the constitutional language in question has been consistently interpreted by the Oklahoma Supreme Court so as to prohibit mu-

nicipalities from creating in one year an obligation that results in a debt beyond (i.e., preceding or succeeding) that year. *City of Stillwater*, ¶ 13.[2]

¶ 15 Finally, we conclude the trial court did not err in affirming the PERB's finding that IAFF failed to meet its burden of proof as to its allegations that City committed unfair labor practices by engaging in bad faith "surface bargaining" intended to delay negotiations. Unlike the matters discussed above, whether such unfair labor practices occurred presents purely a factual question. As quoted above, this Court may not "substitut[e] its judgment as to the weight of the evidence for that of the agency on [a] question of fact," and we can only reverse an agency finding on a question of fact when such finding is clearly erroneous. 75 O.S. 2011 § 322(1).

¶ 16 IAFF did not present any evidence of dilatory tactics on the part of City. In fact, City points out in its appellate brief, and in its filings below, that much of the delay was caused by the acts of IAFF, which cancelled a scheduled negotiation session in November, 2010, and did not respond to multiple attempts by City to reschedule negotiation sessions for a 2010–11 CBA.[3] It was City that forwarded proposed agreements to IAFF, in December, 2010. Upon receiving these proposals, IAFF ultimately decided to invoke interest arbitration; however, this attempt was found, in April, 2011, to have been "improperly and prematurely invoked ... because there had not been a plurality of meetings." [4]

¶ 17 Further negotiations were held in May, 2011, during which City proposed a rollover of the 2009–10 CBA contingent upon the approval by IAFF and the City Council. Upon learning that the City Council had not voted to approve the proposed agreement, IAFF again attempted to go forward with interest arbitration. However, in July, 2011, the Interest Arbitration Board advised the parties that it had no authority to act on a

---

2. We note, in addition, that we can locate no authority requiring that a CBA be in effect between a city and any of its employees each fiscal year.

3. See City's Undisputed Fact No. 4, which is not disputed in IAFF's response.

4. See City's Undisputed Fact No. 5, which is not disputed in IAFF's response.

2010–11 agreement, based on the previous holding that interest arbitration had been improperly invoked by IAFF. In August, 2011, IAFF attempted to select a new interest arbitration board for a 2010–11 CBA, but the 2010–11 fiscal year had already expired.

¶ 18 IAFF failed to present evidence that the failed negotiations, and improper delays, if any, were caused by bad faith actions of City, and we conclude the PERB's finding that IAFF failed to meet its burden of proof as to its allegations that City committed unfair labor practices by engaging in bad faith "surface bargaining" is not clearly erroneous.[5] Therefore, the trial court did not err in affirming this finding of the PERB.

## CONCLUSION

¶ 19 We affirm the district court's Judgment reversing in part, and affirming in part, the order of the PERB.

## ¶ 20 AFFIRMED.

RAPP, P.J., and THORNBRUGH, J., concur.

5. We note that in further support of its allegation that City engaged in surface bargaining, IAFF asserts the City Councilors failed to bring the proposed agreement to a public vote in violation of the Oklahoma Open Meeting Act (OMA), 25 O.S. 2011 §§ 301–314. However, we agree with City that this assertion is irrelevant to the issue presented; as stated by City, whether "the City Council violated the [OMA] by failing to approve a tentative agreement reached by the negotiating teams is not an issue for this appeal." Answer Br. at 17. This assertion would be relevant only if it supported a finding that City committed an *unfair labor practice* by engaging in *surface bargaining*. Regardless of whether the City Councilors violated (or did not violate) a provision of the OMA, there is no dispute that the proposed agreement was not approved by the City Council and that IAFF treated the City Council's actions as a determination not to approve the proposed agreement. There is no indication that any delay was created by the failure on the part of the City Council to hold a public vote on the proposed agreement. Because we are concerned only with whether the PERB's finding is *clearly erroneous* that IAFF failed to meet its burden of proof as to its allegation that *City* engaged in *surface bargaining,* we need not engage in statutory analysis of the OMA to determine whether a violation occurred by the City Council, and we need not address this issue further. *See Traders Compress Co. v. Bd. of Review, Okla. Employment Sec. Comm'n,* 1950·OK 274, ¶ 0, 203 Okla. 564, 224 P.2d 268 (Syllabus by the Court) (Appellate courts "need not determine abstract, hypothetical, or moot questions....").